RECEIVED
MAILROOM

AUG 10 2026

Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHON ROBERT HOPWOOD,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        Civil Action No. 1:25-cv-4214-SLS
                                   )
JILL COCKSON                       )
                                   )
        Defendant.                 )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

COMES NOW Plaintiff Shon Robert Hopwood, pro se, and respectfully submits the following Memorandum of Points and Authorities in opposition to Defendant Jill Cockson's Motion to Dismiss the Third Amended Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Except as to the bar-disciplinary theory. In support of this opposition Mr. Hopwood relies on the allegations of the Third Amended Complaint, which must be accepted as true, on the exhibits Defendant herself has placed before the Court, and on the authorities set forth below.

**INTRODUCTION**

Plaintiff Hopwood filed a Third Amended complaint, alleging various defamation, intentional infliction of emotional distress, and conspiracy to intimidate witnesses claims. The crux of the complaint is that when Hopwood was in high school, he broke up with Defendant Cockson and never spoke to her again after 1993, she stalked his professional and personal life from afar. She claims Hopwood is a certifiable or diagnosable sociopath, psychopath, and narcissist. After Hopwood was charged with various crimes in late 2023, Defendant Cockson also accused him of committing embezzlement at a time when Hopwood was a law professor and law partner. After Hopwood was convicted in DC Superior Court and after Cockson was served the original

complaint, Cockson falsely accused Hopwood of witness tampering in both the DC Superior Court and then in this Court, via her attorney's first motion to dismiss. That accusation was strangely prophetic, as Hopwood later discovered new facts leading to the amended complaint alleging that Cockson conspired to commit witness intimidation and falsely accused Hopwood of doing so.

If this feels stranger than fiction that is because it is. Defendant Cockson moves this Court to dismiss the amended complaint not as it is but as she wishes it to be. Her motion suffers from numerous fatal flaws.

First, this case procedurally sits at the Federal Rule of Civil Procedure 12(b)(6) stage, in which the Court must test the legal sufficiency of the four corners of Hopwood's complaint. Yet Defendant Cookson submitted hundreds of pages of exhibits in support of dismissal, requesting the Court take judicial notice of them to create factual disputes with Hopwood's complaint. Cookson argues, for example, that the Court can take judicial notice that Hopwood, during his trial testimony in his criminal case before the DC Superior Court, admitted to transferring money from a jointly held account to an account that he solely controlled; the gist of Cookson's claim that Hopwood committed embezzlement is thus substantially true, thereby defeating his defamation claim. Mot. Dismiss, at 14-15. That process of disputing facts from Hopwood's complaint is summary judgment in disguise, and Cookson's judicial notice argument goes against the foundational legal standard courts employ in determining a Rule 12(b)(6) motion, which accepts Hopwood's factual allegations as true, including "the falsity of any express ... factual statement" made in the defamatory publication. *Weyrich v. New Republic*, 235 F.3d 617, 623 (D.C. Cir. 2001). Her argument for this Court to take judicial notice of Hopwood's trial transcripts is also squarely foreclosed by binding circuit precedent holding that a "common sense limitation" on judicial notice is that court records cannot be relied upon for the "truth of the matter asserted." *Hurd v. Dist.*

*Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017). At this stage, the Court is largely limited to the factual allegations, taken as true, in Hopwood's complaint, rather than judicially noticed court records, not taken as true, in Cookson's pile of exhibits. When judged by the facts that matter, Hopwood states valid claims for relief.

Second, Defendant Cockson contends that Hopwood is defamation proof, that is, Hopwood cannot prove that Cockson's false statements damaged his reputation more than his criminal convictions and whatever admissions were made in hundreds of pages of exhibits she asks the Court to judicially notice. Mot. Dismiss, at 12-16. Once again, Cockson's position is foreclosed by circuit precedent rejecting the defamation proof doctrine as a "fundamentally bad idea" because even if the truth is "more derogatory than the statements under challenge, the later cannot be said to be harmless," and "[e]ven the public outcast's remaining good reputation, limited in scope though it may be, is not inconsequential." *Liberty Lobby v. Anderson*, 746 F.2d 1563, 1568-69 (D.C. Cir. 1984) (Scalia, J.). Even if the defamation proof doctrine were not foreclosed, it would not apply here. At the time Cockson published the bulk of her false and defamatory statements, Hopwood had not been convicted in DC Superior Court and was still a law professor and law partner. *See Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004) (describing the defamation proof doctrine as applying "when a plaintiff's reputation is so diminished at the time of publication of the alleged defamatory material that only nominal damages at most could be awarded") (emphasis added). Of course, as Hopwood alleges, his reputation could have been harmed at that time.

Third, Defendant Cockson's motion to dismiss fails to acknowledge other binding precedent foreclosing its position. For example, she argues that the email claiming Hopwood intimidated witnesses that she sent to the DC Superior Court and third parties is entitled to judicia immunity. But the DC Court of Appeals has held that only lawyers, judicial officers, jurors, parties,

3

and witnesses in a case are entitled to judicial immunity, and Cockson was none of the above in Hopwood's criminal case. *See Oparaugo v. Watts*, 884 A.2d 63, 79-80 (D.C. 2005). Cockson further argues that since Hopwood is a limited public figure he must allege actual malice, and that he has failed to do so. Yet Hopwood alleged that Cockson had a bad faith vendetta in fabricating false claims against him, amounting to actual malice under binding precedent. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (holding that fabrication of false statements equals actual malice); *Jankowic v. Int'l Crisis*, 822 F.3d 576, 589 (D.C. Cir. 2016) (same). Cockson also argues that is an open question in the DC Court of Appeals whether the discovery rule for statute of limitations purposes applies to social media posts. While that statement is true, Cockson fails to cite three decisions from this Court applying the discovery rule to false claims made on social media. *See Crespo v. 1215 Ct. LLC.*, 2023 U.S. Dist. LEXIS 237817, at *3-4 (D.D.C. May 9, 2023); *Gray v. Harpo*, U.S. Dist. LEXIS 16804, at *11 (D.D.C. June 17, 2024); *Ratchford v. Cafe Dupont*, 2025 U.S. Dist. LEXIS 156747, at *7 (D.D.C. Aug. 14, 2025). Failing to even acknowledge binding precedent, foreclosing its positions and misrepresenting case law is a hallmark of just not a meritless motion, but an unethical one. *In re Pearson*, 228 A.3d 417, 426 (D.C. 2020). It is difficult to imagine how Cockson's counsel failed to acknowledge so much binding precedent: and Hopwood expects opposing counsel to correct the record before this Court. *See* D.C. Code Prof'l Resp., Rule 3.1A & 3.1A1 ("A lawyer shall not knowingly... 'make a false statement of'..law to a tribunal or fail to correct a false statement of 'law made to the tribunal.'").

As to the rest of Hopwood's claims, Cockson largely ignores Hopwood's factual allegations or argues that Hopwood has not presented sufficient evidence, even though at the pleading stage Hopwood's allegations are taken as true, and no evidence is needed. It is hard to trust a motion with so many major missteps.

4

Rather than grapple with Hopwood's well pleaded complaint, Cockson attempts to tie this civil case to Hopwood's pending criminal case, even though there is little overlap between the two cases. She does so to selectively quote Hopwood's trial transcripts and to convince the court that she correctly claims Hopwood as having diagnosable or certifiable sociopathy, psychopathy, or narcissism. But obviously, the merits come later. And if Cockson was so confident about the merits, there would be no need for her witness tampering. For now, the court need only decide whether Hopwood has stated timely and legally sufficient claims for relief. He has.

## BACKGROUND

From 2011 to 2026 Defendant Jill Cockson publicly claimed that Plaintiff Hopwood was a "monster," that is, he was a certifiable or diagnosable sociopath, psychopath, or narcissist. R. 14, at 7-10 (Third Amended Complaint). Cockson further claimed that Hopwood was being investigated, charged, and indeed committed, embezzlement. R. 14, at 8-11. Cockson made these claims on social media, in the comments section of online articles and blog posts, and to Hopwood's employers and family. Then she falsely claimed that Hopwood tampered with witnesses, when it was she who intimidated two witnesses in this case.

### A. Plaintiff Hopwood was a law professor and law partner—and had yet to be convicted in DC Superior Court—when Defendant Cockson published the bulk of her false and defamatory statements against him.

From 2011 to late 2023, Hopwood attended law school, became an attorney, was a partner at a law firm, clerked at the DC Circuit, was a tenure-track law professor at an elite law school, was featured on 60 Minutes, spoke at Congress, was a frequent visitor to the White House, and advocated for criminal justice reform. R. 14, at 6-7 (Third Amended Complaint); R. 12, at 5 (Mot. Dismiss). As Defendant Cockson notes, Hopwood "made himself a household name in the legal community." R. 12, at 5. To the world, he had a reputation worth preserving.

Despite his reputation for his good works on criminal justice reform, there was someone lurking in the background attempting to take him down—Defendant Cockson. She contacted his employer at the DC Circuit, Judge Janice Rogers Brown, and the law school where he taught, Georgetown University Law Center. R. 15, at 21-22. She attempted to convince those employers to terminate Hopwood's employment because he was a certifiable or diagnosable sociopath, psychopath, or narcissist who was "cruel to animals." *Id.* at 21-24.

In October 2023, Hopwood was charged with two counts of misdemeanor assault against his wife. While Hopwood awaited trial on those charges, he continued to remain employed at Georgetown, and he continued obtaining clients at his law practice and litigating cases. It was during this time when Hopwood was charged with two misdemeanor assaults in which he possessed a presumption of innocence, that Cockson published the bulk of her false and defamatory statements against Hopwood. R. 15, at 8-10 (noting her social media posts and website comments were from 2023 to March of 2025, and Hopwood's trial started in June of 2025).

### B. Plaintiff Hopwood filed and served an initial complaint listing two potential witnesses.

On December 3, 2025, Plaintiff Hopwood filed an initial complaint against Defendant Cockson. R. 1. In the complaint, it listed two potential witnesses. *Id.* The first potential witness was Joshua Boyer, who also serves as Hopwood's power-of-attorney on some financial and legal matters. R. 21 at 8-12 (Mot. for Sanctions). The second potential witness was reporter Chandra Bazelko. R. 1. Ms. Bozelko later filed a letter with the Court, disputing some of the factual allegations in the complaint and asking them to be removed from the complaint. R. 21 , at 8-12. Hopwood later removed Ms. Bozelko's name from the First Amended Complaint. R. 2. Mr. Boyer served the initial and First Amended complaints to Defendant Cockson. *Id.* (Mot. Sanctions).

Both Mr. Boyer and Ms. Bozelko received threatening and harassing text messages from the same anonymous telephone number. *Id.* (Mot Sanctions). Mr. Boyer also received an email from purported USA Today Editor Eileen Rivers asking him for comment on Ms. Bozelko's letter. *Id.* (Mot Sanctions).

Defendant Cockson emailed DC Superior Court Judge Errol Arthur (who presides over Hopwood's criminal case), several federal prosecutors, and third parties, via an email account justiceforjill.cockson@gmail.com. *Id.* (Mot. Sanctions). In the email, she stated that Hopwood intimidated witnesses and asked that "controls" be placed on him. *Id.*

### C. Plaintiff Hopwood amends the complaint several times, raising additional defamation per se and conspiracy to intimidate witnesses counts.

On February 24, 2026, Hopwood moved to amend his complaint, raising an additional count of defamation per se, regarding the justiceforjill email. R. 9 (2nd Amended Complaint). The Court granted that motion, and Defendant Cockson moved to dismiss the amended complaint. R. 12 (Mot. Dismiss).

### D. Newly discovered evidence, the Third Amended Complaint, and the present motion.

On March 15, 2026, Plaintiff Hopwood received new information about Chandra Bazelko from his power-of-attorney Joshua Boyer. R. 21, at Ex. 2. It was discovered that Ms. Bozelko received threatening and harassing text messages from the same anonymous phone number that had sent similar messages to Mr. Boyer. *Id.* At 8-13. As a result of this new evidence, Plaintiff Hopwood moved to file a Third Amended complaint, R. 15.

Defendant Cockson filed a motion to dismiss, attaching hundreds of pages of exhibits. R. 22. She argued that the Court can take judicial notice of the exhibits, which prove that Hopwood's claims of defamation are substantially true and that he had no reputation to be damaged—that he was defamation proof. R. 22 at 14-19. She further argued that her justiceforjill

email was covered by judicial immunity, that Hopwood cannot plead actual malice, and that many of his claims are untimely. R. 22 at 12-30.

ARGUMENT

Defendant Cockson's motion to dismiss is meritless because she misstates the law and the contents of Plaintiff Hopwood's well-pleaded complaint.

**I. Defendant Cockson fundamentally misunderstands the legal standard the Court must apply in determining a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).**

In support of her motion to dismiss, Defendant Cockson asks the Court to take judicial notice of hundreds of pages of exhibits for the truth of the matter Cockson asserts. R. 22, at 14-19. She does so to argue the "truth" about Hopwood's reputation from "judicially-established facts and his own sworn admissions." R. 22, at 14-15. She then uses these judicially-noticed facts from sworn admissions in his trial testimony in his criminal case to argue that Cockson's descriptions of him as a "sociopath," "psychopath," and that he is "cruel," and guilty of "embezzlement" "substantially true." *Id.* At 14-19. What is sorely lacking—for page after page of Cockson's arguments about what the truth is—are any citations to the factual allegations that Hopwood made in his third amended complaint. *See* R. 22, at 21-22 (no citations to the complaint in his argument sections). Cockson fundamentally misunderstands how a court analyzes a complaint when a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

> **A. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint and requires the Court to accept Plaintiff Hopwood's factual allegations, including the falsity of Defendant Cockson's published statements, as true.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint, *see Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), rather than the evidentiary sufficiency of the merits. In determining a Rule 12(b)(6) motion, a court assumes that a plaintiff's factual

8

allegations are true, including whether factual statements published by defendants are false and assumes that "such statements were made by [the defendant] with knowledge of their falsity or reckless disregard of the truth." *Weyrich v. New Republic*, 235 F.3d 617, 623 (D.C. Cir. 2001). When a defendant moves to dismiss and introduces matters outside the pleadings," Rule 12(b)(6) requires a court "to ignore that evidence in deciding the motion... or to convert the motion into one for summary judgment." *Hurd v. Dist. Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017). And if a court converts the Rule 12(b)(6) motion into summary judgment, it must "provide the parties with notice and an opportunity to present evidence in support of their respective positions, *Hurd*, 864 F.3d at 678.

Defendant Cockson's motion to dismiss is akin to requesting summary judgment. She asks this court to take judicial notice of what she claims as judicially-noticeable facts and Hopwood's claimed admissions during his trial testimony, to create factual disputes with Hopwood's well-plead factual allegations, which, at this stage, the court must take as true. R. 15, at 14 ("Likewise, Mr. Hopwood admitted under oath to transferring money from a joint business account to an account his wife could not access, amply justifying Mr. Cockson's description of that behavior as 'embezzlement.'"); *id.* ("Because the truth—as established by Mr. Hopwood's convictions and admissions—is devastating to his reputation, the gist of the statement is substantially true."). That method of summary judgment in disguise is not permitted at this stage, which requires the court to assume Hopwood's factual allegations as true. *See Hurd*, 864 F.3d at 687 (holding that a defendant may not point "to the content of evidence in other cases [in his criminal case] to rebut facts adequately stated in an opposing party's pleading").

### B. Binding circuit precedent forecloses the use of judicial notice of court records as to the truth of the matters Defendant Cockson asserts.

Defendant Cockson attempts a work-around of the foundational rules a court must employ when determining a Rule 12(b)(6) motion to dismiss by attaching hundreds of pages of exhibits to be judicially noticed as the "truth," R. 22 at 14 ("Ms. Cockson expressed her view that Mr. Hopwood is what his convictions and sworn admissions establish him to be."). Putting aside that Hopwood challenges the accuracy of his purported admissions—made during his trial testimony before the DC Superior Court in his criminal case—Cockson's position advocating for dismissal based on the "truth" of court records is foreclosed by binding circuit precedent.

In *Hurd*, the district court judicially noticed a fact asserted as the truth in holding that the plaintiff was precluded from raising that fact in his complaint. The Court reversed, holding that a "common sense limitation" on judicial notice is that court records cannot be relied upon "for the truth of the matter asserted." *Id.* at 686. ("A court cannot take judicial notice of the truth of a document simply because someone put it in the court's files."). As in *Hurd*, Defendant Cockson "sought to have documents supportive of its view of potentially disputed issues of fact considered as if they were part of the plaintiff's own allegations." *Id.* at 687. That argument is foreclosed by Hurd.

### C. Plaintiff Hopwood did not admit to committing embezzlement in his criminal case.

The commonsense limitation in *Hurd* makes perfect sense. Courts should "exercise caution when confronted with such heavy reliance by a defendant on extra-complaint materials," *Real World Media v. Daily Caller*, 744 F.Supp.3d 24, 31 (D.D.C. 2024). Caution is needed because defendants "face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint; absent courts' careful analysis of which documents—and which facts within those documents—are properly considered, this tactic can lead to premature dismissals of plausible claims." *Id.* And when parties "pile on volumes of exhibits to their motion to dismiss,"

10

their submissions can become "needlessly unwieldly." *Id.* That is exactly what occurred in Defendant Cockson's submissions, and the Court should ignore her pile of exhibits.

But to be clear, Plaintiff Hopwood disputes that he admitted committing embezzlement—or, for that matter, that he is a diagnosable sociopath, psychopath or narcissist who is cruel to animals—during his trial testimony in his criminal case. Instead, Hopwood admitted taking money he earned from billable hours from a jointly-held law firm account, to an account he solely controlled. R. 22, at 16. If removing funds from a law firm trust account on a monthly basis for earned billable hours is embezzlement, then many law firms, including Steptoe LLP, are embezzlers. If putting money one earns into a separate and exclusive account from a spouse were embezzlement, then many married people would be embezzlers. Fortunately, that is not the law. Nor is using facts from Hopwood's criminal trial as the "truth" in order to dispute the factual allegations in Hopwood's complaint.

The legal standard used to determine Rule 12(b)(6) motions is not new. Cockson moves to dismiss and in the same breadth contravenes the very rules the court must employ to determine her motion. An inability to comprehend the basic rules of a 12(b)(6) motion does not bode well for the rest of her legal arguments.

## II. Defendant Cockson's reasons for dismissing the defamation per se counts are meritless because she misstates both the relevant law and Plaintiff Hopwood's pleaded factual allegations.

Defendant Cockson brings a bevy of arguments for why the Court should dismiss the defamation claims. In doing so, she fails to acknowledge binding precedent foreclosing her positions, misstates the relevant law, and ignores the factual allegations in Hopwood's well-pleaded complaint.

### A. Binding precedent firmly rejects application of the defamation proof doctrine, in this Circuit, as a reason to dismiss defamation claims.

Cockson claims that the Court should dismiss the defamation counts labeling Hopwood as a "certifiable" or "diagnosable" psycopath, sociopath, and narcissist, a "textbook sociopath," who exhibited "signs of sociopath, or psycopathy," and who also committed "embezzlement" and intimidated "witnesses." R. 22, at 21, 23-31. The defamation counts should be dismissed, according to Cockson, because Hopwood is "defamation proof." R. 22, at 14-17; *see also Logan v. Dist. Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978) ("Thus, it is highly likely that if the plaintiff was to somehow prevail on the legal issue he would not be able to recover damages and, therefore, he will be found "libel-proof" as a matter of law."); *Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004) (noting that "when a plaintiff's reputation is so diminished at the time of publication of the alleged defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law...."), quoting Elist J. Katz, Annotation, *Defamation: Who is "Libel-Proof*," 50 A.L.R. 4th 1257 (2004)).

In what is the theme of Cockson's motion to dismiss, the defamation proof argument is **foreclosed by binding DC Circuit precedent**. In *Liberty Lobby v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984), the court rejected the defamation-proof doctrine, in part, because courts would have difficulty "determining that someone's reputation had already been "irreparably" damaged— *i.e.*, "that no new reader could be reached by the freshest libel." The court also rejected the defamation-proof doctrine because it is based on the assumption:

> [T]hat one's reputation is a monolith, which stands or falls in its entirety. The law, however, proceeds on the optimistic premise that there is a little bit of good in us all—or perhaps on the pessimistic assumption that no matter how bad someone is, he can always be worse. It is shameful that Benedict Arnold was a traitor; but he was not a shoplifter to boot, and one should not have been able to make that charge while knowing its falsity with impunity.

12

*Id.* The court held that the defamation-proof doctrine was a "fundamentally bad idea," and it would not assume the doctrine was "the law of the District of Columbia; nor is it part of federal constitutional law." *Id.* at 1568-69. Defendant Cockson's primary legal argument for dismissal is thus foreclosed by *Liberty Lobby*.

A quick word here: Cockson's counsel have all the luxuries of legal research at its fingertips; yet counsel failed to even cite or acknowledge *Liberty Lobby*, a fairly well-known circuit precedent written by then-Judge Scalia. Liberty Lobby was cited and discussed heavily in *Moldea v. New York Times*, 22 F.3d 310, 318-9 (D.C. Cir. 2000) ("*Liberty Lobby* rejected the defendant's claim that the plaintiffs in that case were 'libel-proof'...."). And *Moldea* was a decision counsel cited heavily in its motion to dismiss, R. 22, at 16-17, 20, and 32. So it is curious how opposing counsel failed to even acknowledge binding precedent that squarely forecloses its position.

> **B. Even if the defamation-proof doctrine was viable in this circuit, it does not apply to the bulk of Defendant Cockson's defamatory statements because Plaintiff Hopwood's reputation was not so diminshed when Cockson published those statements.**

From 2011 to 2023, Defendant Cockson notes:

> Mr. Hopwood attended law school, became an attorney, clerked for the D.C. Circuit, taught at Georgetown Law Center, operated a law firm, and advocated for criminal justice reform... He made himself a household name in the legal community... Mr. Hopwood was perhaps the most prominent formely-incarcerated spokesperson for criminal justice reform....

R. 22 at 6. During this time period, Cockson made defamatory statements against Hopwood that a jury certainly could find damaged Hopwood's reputation.

Then Cockson made additional defamatory statements after Hopwood was charged with two counts of misdemeanor assault in October of 2023. R. 22 at 6-7. In fact, Cockson made the bulk of her defamatory statements from November of 2023 to March of 2025, months before

13

Hopwood's trial began and well-before his convictions in D.C. Superior Court. R. 15 at 21-31. Defendant Cockson published the bulk of her defamatory statements when Hopwood was still a law professor at a prestigious law school and law partner, when he had a legal presumption of innocence, and when his reputation was not "so diminished" at the time of publication of the alleged defamatory material." *Lamb*, 391 F.3d at 1137. Cockson's defamation-proof argument— even if viable in the District—rests on an erroneous chronology of events and facts alleged in Hopwood's well-pleaded complaint. Hopwood had a reputation to protect that Cockson damaged by publishing false and defamatory statements against him.

The same result applies to Cockson's defamatory statements that Hopwood committed witness tampering, when Cockson emailed the DC Superior Court and federal prosecutors in December of 2025. R. 15 at 31-33. Hopwood was not convicted of witness tampering in the DC Superior Court and thus claiming that he committed a new crime would have, under *Liberty Lobby*, impacted and damaged what reputation of his remained, not to mention that her defamatory statements could have led to repercussions in the DC Superior Court had she been believed. R. 21 at 8-13 (noting that Cockson asked Judge Arthur to put "controls" on Hopwood at the DC Jail).

At the end of the day, there is no gust or substantial truth that Hopwood suffers from mental illness, was cruel to animals, or that he committed embezzlement or witness tampering. As to damages, a jury should decide that question rather than the court via a motion to dismiss. Defendant Cockson's argument that Hopwood is defamation-proof is meritless.

### C. Plaintiff Hopwood's criminal convictions in the D.C. Superior Court are far from final.

Reputations are not monoliths, *See Liberty Lobby*, 746 F.2d at 1568, and defamation law is not an on-off switch that is unavailable depending on criminal convictions. If that were true, the tens of millions of Americans with criminal convictions would have no legal recourse when

persons defame their reputations. Despite binding precedent foreclosing application of the defamation-proof doctrine in this jurisdiction, Cockson argues that Hopwood's recent convictions somehow matter when the Court decides Cockson's motion to dismiss. They don't.

Hopwood has not been sentenced and no judgment of conviction has yet to be entered against him. He also has meritorious issues for appeal. Simply put, by the time this Court decides the motion to dismiss, Hopwood's convictions could be vacated, his release from custody granted, and his law license unsuspended.

And that illustrates the danger of the defamation-proof doctrine; an on-off switch based on a non-final conviction could lead the Court to prematurely dismiss Hopwood's meritorious defamation claims based on a legal doctrine that, while foreclosed by circuit precedent, also would lead to anomalous results based on the time when the Court decides a motion to dismiss. Plaintiff Hopwood had a standing reputation at all times when Cockson published defamatory statements against him—even now, he still retains a reputation as a legal litigator no matter his non-final convictions—and a conviction without a final judgment does not impact the Court's analysis of Hopwood's defamation claims.

### D. The "gist" of Defendant Cockson's statements is not substantially true.

Cockson also argues that the gist of her statements are substantially true. R.22 at 16-19. For example, she argues that Hopwood admitted to "transfering money from a joint business account to an account his wife could not access," amply justifying Mr. Cockson's description of that behavior as embezzlement. *Id.* at 16. And she claims that accusing him of "witness intimidation" in this civil case was no different than his having been convicted of contempt and obstruction of justice in his criminal case. *Id.* at 18. These arguments ignore the facts as alleged in Hopwood's amended complaint and relevant law.

As to the facts, Hopwood alleged in his complaint that Cockson claimed he was being "investigated and charged" with embezzlement, R. 22 at 16, which has not happened. Nor did Hopwood admit to embezzlement at his criminal trial; he instead admitted to withdrawing money from a jointly-owned law firm account for his monthly billable hours and then depositing some of that money into a solely-owned account. And even if he had admitted to embezzlement, this Court cannot take judicial notice from his criminal trial as to the truth. The DC Circuit has twice stated that a person who commits one sort of crime may suffer damages if accused of a different sort or new crime. *See Liberty Lobby*, 746 F.2d at 1568-69; *Moldea*, 22 F.3d at 319; *but see Liberty Lobby*, 746 F.2d at 1568-69 n.6 (providing example of burglar alleged to have been convicted of 35 burglaries rather than the correct number of 34 not actionable for a claim that the individual is a habitual burglar). Here, the justiceforjill email claimed that Hopwood committed additional crimes while in the DC Jail, which could have further damaged his reputation and led to other undesirable consequences, such as the DC Superior Court putting "controls" on Hopwood. R. 15 at 31-32; R. 21 at 12. There was no gist to suggest Hopwood committed embezzlement, nor witness tampering, and those statements are actionable as defamation per se.

Next Cockson argues a red herring: that any vague epithets Cockson used to describe Hopwood are well within the scope of the conduct for which Hopwood has been convicted or has admitted under oath. R.22, at 18. To paraphrase, if Cockson alleged Hopwood was "violent and cruel," or "disrespects the law," or "disrespects others' property," those are all substantially true. *Id.* But Hopwood's complaint nowhere alleges those are the "vague epithets" Cockson used to defame him. Rather the complaint alleges Cockson called him a "certifiable" or "diagnosable" sociopath, psychopath, and narcissist—*i.e.*, that he has a legitimate mental health illness—none of

16

which are established by his criminal trial. Once again, Cockson argues against the complaint she wishes it to be instead of the actual allegations within the four corners of Hopwood's complaint.

> ### E. Defendant Cockson's statements that Plaintiff Hopwood is a certifiable or diagnosable sociopath, psychopath, and narcissist, who is cruel to animals, and who also committed embezzlement and witness tampering are statements of fact that are provably false and constitute viable defamation claims.

To be sure, Defendant Cockson's conclusion that Hopwood is a "monster" is an opinion protected by the First Amendment and is not actionable as defamation. *See Competitive Enter. v. Mann*, 150 A.3d 1213, 1241-42 (D.C. 2016) ("[S]tatements that constitute imaginative expression and rhetorical hyperbole are not actionable because they cannot reasonably be interpreted as stating actual facts about an individual."). There is First Amendment breathing room for Cockson to argue that, for example, Georgetown Law should terminate Hopwood's employment because he is a monster, and do so publicly.

Cockson's claims, however, that Hopwood has "certifiable" or "diagnosable" mental illness, is "cruel to animals," and that he committed "embezzlement" and "witness tampering," are all statements of fact that are provably false and are actionable defamation claims. *See Milkovich v. Lorain Journal*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or his assessment of them is erroneous, the statement may still imply a false assertion of fact."); *Fells v. SEIU*, 281 A.3d 572, 587-88 (2022) (holding that a jury could conclude that an opinion, that included the false impression that plaintiff had been ousted from his employment for sexual misconduct, was actionable); *Moldea*, 22 F.3d at 313 ("Statements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false.").

As to Defendant Cockson's claim that Hopwood committed embezzlement and witness tampering, the Supreme Court and the D.C. Court of Appeals have expressly held that false

17

statements about the commission of a crime are actionable. *See Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978) (holding that false statements about criminal offenses are actionable and defamatory per se because "by their very nature are likely to cause mental and emotional distress, as well as injury to reputation"); *Guilford v. Wilner*, 760 A.2d 580, 600 n.19 (D.C. 2000) (noting the "well settled general rule" that charging a plaintiff with criminal conduct is "libelous per se").

Cockson's claims about Hopwood having mental illness and being cruel to animals is also actionable. Cockson falsely claimed that Hopwood was "a certifiable psychopath and sociopath," R. 15, at 21, that he was "a textbook sociopath" who engaged in "sociopathic terrorism," R. 15, at 24, that Hopwood was "a psychopath" who was "cruel to animals," R. 15, at 25, that Hopwood had "a hard-wiring defect," and that Hopwood's "behavior is stereotypical of a narcissist and sociopath," R. 15, at 28, and that Hopwood exhibited "signs of sociopathy/psychopathy" and she predicted that someone would be "planning [a] funeral" because of him, R. 15, at 29. Cockson made these claims about Hopwood being dangerous because he had verifiable mental illness even though she had not spent time around Hopwood since 1992, not spoken with him since 1993, and she is a bartender, not a psychiatrist. R. 15, at 6. Her claims that Hopwood is a "certifiable," "diagnosable," "textbook" sociopath, psychopath, and narcissist with a "hard-wiring defect," and "behavior" of a "stereotypical" narcissist and sociopath could only be viewed as claiming that Hopwood has verifiable mental illness in the form of psychopathy, sociopathy, or narcissism, facts that Hopwood, on the merits, will prove are demonstrably false. These are quintessential statements of fact that are actionable. *See Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969) (holding that statement specifically alleging clinically diagnosable paranoia was actionable).

*Weyrich v. New Republic*, 235 F.3d 617 (D.C. Cir. 2001) is easily distinguishable due to the context of the alleged defamatory statement made in that case. The New Republic was a well-

known "magazine of political commentary," and the article in question made a "single reference" to the plaintiff's "paranoia." *Id.* at 624-25. The court concluded that the article's use of the word "paranoia" was made in "the popular, not clinical, sense to describe and criticize what [the author] sees as early symptoms of the nervous breakdown that afflicts conservatives today." *Id.* at 624. As a result, the court concluded the article, viewed in the "proper context," was "rhetorical sophistry" and never made a "verifiable" "psychological pronouncement." *Id.* at 625.

Here, there was no "single reference" to a false claim of mental illness, but several. R. 15, at 21, 24-25, and 29. Cockson claimed to know Hopwood so well—despite not speaking with him since 1993—that she could diagnose him as having "certifiable, diagnosable, hard-wiring defects" in the form of "sociopathy, psychopathy, and narcissism." This was not political commentary, made in a "well-understood context" of political opinion. *Id.* at 625. The only part of *Weyrich* that is applicable here is its holding that "it is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Id.* at 627. Here, Cockson's publications are reasonably capable of making a public diagnosis of mental illness and cruelty to animals in an effort to convince the public that Hopwood is the equivalent of a serial killer and that the public will be planning a funeral because of him." R. 15, at 29. Those claims are both false and defamatory.

### F. Binding precedent forecloses Defendant Cockson's claim of judicial immunity for her defamatory claim that Hopwood intimidated witnesses in her Justice for Jill email sent to the DC Superior Court, federal prosecutors, and third parties in Hopwood's criminal case.

For the third time, Defendant Cockson has advocated for a position that is foreclosed by binding precedent. Cockson sent an email to Superior Court Judge Errol Arthur, federal prosecutors, and third parties, claiming that Hopwood "is still committing crimes," including

"witness intimidation." R. 15, at 31. As Hopwood's motion for sanctions and expedited discovery proves, that was false. R. 21. But Cockson now claims that her Justice for Jill email was absolutely privileged under *Brown v. Shimabukuro*, 118 F.2d 17, 18 (D.C. Cir. 1941), a case, along with *Young v. Young*, 18 F.2d 807 (D.C. Cir. 1927), that were forerunners to the doctrine of judicial immunity. Neither *Shimabukuro*, nor judicial immunity applies here.

As to *Shimabukuro*, Defendant Cockson claims, "Statements filed with court 'are absolutely privileged if they have enough appearance of connection with the case in which they are filed so that a reasonable man might think them relevant. They need not be relevant in any strict sense.'" *Id.* at 18. That is selective quoting at its finest and one can only assume by this point that Defendant Cockson's counsel did it deliberately. The "statements filed with court," in *Shimabukuro*, were "statements in pleadings and affidavits" that were filed by a party's "attorney." *Id.* at 17-18. Defendant Cockson was not a participant, a party, or a lawyer in Hopwood's criminal case, and she is not entitled to any immunity for involving herself in Hopwood's criminal case to make false claims of witness tampering in an effort to put "controls" on him at the DC Jail so that he could not litigate this case.

This jurisdiction "has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding." *Oparaugo v. Watts*, 884 A.2d 63, 79 (D.C. 2005). This judicial immunity or judicial privilege extends to "defamatory matter," and its purpose is based upon a public policy of securing to attorneys ... the utmost freedom in their efforts to secure justice for their clients." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 586 cmt.a). But the doctrine's scope come with "some limitations," including that it only applies to court statements made by "judicial officers acting in an official capacity, grand and petit jurors performing their

functions, witnesses even if testifying by affidavit, counsel in the conduct of the case, parties and instigators of prosecution in criminal cases." *Id.* (quoting PROSSER AND KEETON ON TORTS at 816-17 (5th ed. 1984)). Defendant Cockson was none of the above in Hopwood's criminal case. In Oparaugo, the court noted that there were no cases to support an extension of immunity "to a person who was not involved in, or connected with the judicial proceedings in one of the type of capacities [listed above]." *Id.* Same here.

Defendant Cockson's argument that "seeking redress in court" is immune from liability under the Petition Clause of the First Amendment fares no better. R. 22 at n.5. The so-called Noerr-Pennington doctrine applies to "litigation" and suits filed in court as redress to the courts. *See Prof'l Real Estate Investors v. Columbia Pictures*, 508 U.S. 49, 57 (1993) ("We left unresolved the question presented by this case—whether litigation may be a sham [under *Noerr-Pennington*] because a subjective expectation of success does not motivate the litigant.") (emphasis added); *Covad Commun. Co. v. Bell Atl. Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005) ("*Noerr-Pennington* immunity, however, does not extend to 'sham litigation.'"); *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 157 (D.D.C. 2008) (noting that the *Noerr-Pennington* doctrine originated from anti-trust litigation). Defendant Cockson's redress to the courts here was not a good-faith suit or litigation against Hopwood; it was a bad-faith effort to involve herself in Hopwood's criminal case—a case in which she was not a witness, party, or lawyer. If Cockson wanted to report Hopwood for committing a new crime, she should have contacted the police or FBI, not Hopwood's trial judge who, by that point, was only considering whether to grant Hopwood's motion for a new trial.

In any event, "[s]ham litigation ... receives no protection, and the presumption of immunity is dispelled when a lawsuit (1) is objectively baseless in the sense that no reasonable litigant could

realistically expect success on the merits and (2) is brought with the specific intent to further wrongful conduct ..." *Nader*, 555 F.Supp. 2d at 157. Cockson was not a litigant in Hopwood's criminal case, nor was she a participant in any way. To the extent she could be considered a litigant, no reasonable litigant would have expected Judge Arthur to put "controls" on Hopwood based solely on an email claiming that Hopwood committed witness tampering. And she did so to place blame on Hopwood for her own witness intimidation scheme. R. 15, at 31-33. The *Noerr-Pennington* does not apply here, but if it did, the sham litigation exception would apply.

> G. Even if Plaintiff Hopwood is a limited or public figure, alleging that Defendant Cockson knowingly fabricated these defamatory statements of fact, because she holds a grudge against Hopwood for ending their romantic relationship over thirty years ago, constitutes actual malice.

Plaintiff Hopwood concedes that he is a limited-public figure and, therefore, he must plead actual malice. *See Jankovic v. Int'l. Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) ("As a limited-purpose public figure, [the plaintiff] can prevail on his defamation claim only if he proves that the statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."); *see also New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). At this stage, all Hopwood must do is adequately plead his case for actual malice, because actual malice is a "subjective standard" that "necessarily contemplates examination of the speaker's editorial process to prove the necessary awareness of probable falsehood," a plaintiff often needs to later on in the litigation, depose the defendant on this state-of-mind question. *Capital Intel. Grp. v. Waldman*, 352 A.3d 783, 799 (D.C. 2026); *See also Couch v. Verizon*, 105 F.4th 425, 432 (D.C. Cir. 2024) ("Of course, at the motion to dismiss stage, we do not require [Plaintiff] to do any more than plead sufficient facts to plausibly state his claim [for actual malice].")

Plaintiff Hopwood pleaded that Cockson "fabricated claims that she made up and knew were false" because she was "bitter" about Hopwood ending their relationship. R. 15, at 21, 23,

25, 26-28, 30. Hopwood pleaded that Cockson was not a "psychiatrist," had not "evaluated Hopwood," and had not even "spoken to him since 1993." *Id.* As to all claims, including that Hopwood committed embezzlement and witness tampering crimes, Hopwood plead that Cockson "fabricated" and "made up" these claims "unsupported by any facts," and she knew they were "false because she was the one who threatened and harassed witnesses." R. 15, at 23. She made the claims about witness tampering with ill-will "for the express purpose of discrediting him before judicial and prosecutorial authorities, consistent with her fourteen-year pattern of contacting authorities with false claims about Hopwood." R. 15, at 31. When Hopwood confronted Cockson regarding her claim that he embezzled money, Cockson stated, "I believe I got the embezzlement information from the online portal documenting your case. I can rephrase. I believe you are being investigated for embezzlement. Now it's a statement about my beliefs. Fun trick, huh?" R. 15, at 26-27. Cockson knew her embezzlement claim was false, and she "reformulated [her words] specifically to evade liability." *Id.* at 27.

These well-plead allegations more than meet the threshold for alleging actual malice at the motion to dismiss stage. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (holding that actual malice can be when "a story is fabricated by the defendant" or is a "product of [the defendant's] imagination'"); *Jankovic*, 822 F.3d at 590 (holding that actual malice may be proved by "evidence of ill will or bad motive" if it "is also probative of a willingness to publish unsupported allegations"); *Waldman*, 352 A.3d at 800 (holding that actual malice may be proved by allegations used to "punish" a plaintiff "through falsehood [the defendant] knew or strongly suspected was false") (citing *Tavoulares v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987)).

To beat a dead horse, Cockson continues to ignore binding precedent foreclosing her positions, much like she ignores Hopwood pleaded factual allegations that do not support her

chosen narrative, again. And she unethically fails to acknowledge binding precedent foreclosing her position.

### H. Plaintiff Hopwood's defamation claims are timely-filed under the discovery rule.

Defendant Cockson argues that, with the exception of her March 2025 statements, all of her prior statements were beyond the one-year statute. R. 22 at 28-30. Furthermore, she argues that the D.C. Court of Appeals rejected application of the discovery rule for alleged defamatory statements made in mass media. *Id.*. She also contends that while courts in the District are divided on whether the discovery rule applies to "inherently undiscoverable" statements, posts on social media are the "modern equivalent" to mass media posts; the discovery rule thus does not apply to social media posts. R. 22 at 28-30 (citing *Ramos v. ADR Vantage*, 2021 WL 4746266, at *7 (D.D.C. Sept. 29, 2021)). She lastly cites to federal and state cases that have held that social media are analogous to mass media for discovery rule purposes. *Id.* (citing cases from Massachusetts, E.D. Pennsylvania, and the S.D. Texas). *See also Chandler v. Berlin*, 998 F.3d 965, 971-72 (D.C. Cir. 2021) (noting that the D.C. Court of Appeals has "expressly left open whether the rule applies to outside jurisdiction published statements that were "not otherwise discoverable").

Once again, Cockson's counsel fails to adequately state the law in this jurisdiction. Armed with nothing more than a rudimentary law library in the D.C. Jail, Hopwood will provide a more accurate appraisal of current law and the individual allegations made in his complaint. While the D.C. Court of Appeals held that the discovery rule does not apply to publications in mass media— *i.e.*, newspapers, magazines, television, and the like—it has left open the possibility that the discovery rule "might be justified" for defamatory statements that are "inherently undiscoverable" because the statement was "published secretly," or the defendant "took steps to prevent the plaintiff from uncovering the statement," or the published statements are in "circulars, newsletters or even

24

newspapers addressed to a specialized readership." *Mullin v. Wash. Free Wkly.*, 785 A.2d 296, 299 n.5 (D.C. 2001); *see also, Oparaugo*, 884 A.2d at 72-73 ("The rationale underlying this principle is that the fact of the injury is readily ascertainable upon publication because the harm occurs with publication.")

Since *Mullin*, federal courts have, for the most part, uniformly applied the discovery rule to defamation claims outside of the mass media context. *See McFadden v. Wash. Metro.*, 949 F. Supp. 2d 214, 221 (D.D.C. 2013) (applying discovery rule to defamatory claims "akin to a specialized readership"). This Court in *McFadden* noted—contrary to Defendant Cockson's claim about Virginia's laws on the discovery rule, R. 22 at 29—that Maryland applies the discovery rule to defamatory claims outside the mass media context, and the District derives its "common law from Maryland decisions" on common law questions as "authoritative in the absence of District Authority." *Id.* at 222 (citing *Solid Rock Church v. Friendship Pub. Charter Sch.*, 925 A.2d 554, 561 (D.C. 2007)). More importantly, Defendant Cockson fails to cite or even acknowledge three cases from this Court applying the discovery rule to "social media" posts. *See e.g., Crespo v. 1215 Ct. LLC*, 2023 U.S. Dist. LEXIS 237817, at 3-4 (D.D.C. May 2, 2023); *Gray v. Harco*, 2024 U.S. Dist. LEXIS 106804, at *11 (D.D.C. June 17, 2024); *Ratchford v. Cafe DuPont*, 2025 U.S. Dist. LEXIS 156747, at *7-8 (D.D.C. Aug. 14, 2025). By this point, Cockson's failure to cite authorities inconsistent with her position seems either reckless or deliberate.

In *Ratchford*, the Court applied the discovery rule to "social media" posts that were "public" because the posts were not mass media and were "plainly difficult to discover." *Id.* at 7-8. Same here. Plaintiff Hopwood had no idea that Cockson was posting defamatory statements on her social media because he had not spoken to her since 1993, was not following her posts, and had no way of knowing about her posts until another person alerted him of them. Hopwood would have to

25

search every former contact going back thirty years to discover such posts, which were plainly undiscoverable. "Because statute of limitations issues often depend on contested facts, courts hesitate to dismiss claims as untimely at the pleading stage." *Firestone*, 76 F.3d at 1209. "Granting [Hopwood] the benefit of all inferences that can be derived from [his] allegations, ... the court must assume that [he] only recently became aware of the alleged defamatory posts." *Ratchford*, at *8. The count relating to social media posts were timely filed.

As to Count One and Nine, Hopwood alleged that Cockson sent defamatory statements to his law school and employers. R. 15, at 21-22, 32-33. Hopwood had no way to discover those private statements; they were undiscoverable. Hopwood has adequately plead timeliness on those claims. *See McFadden*, 949 F.Supp. 2d at 221 (applying discovery rule to statements made at a grievance hearing that were difficult to discover). Again, at the pleading stage, Cockson's untimeliness arguments have no merit.

### I. Plaintiff Hopwood's "on information and belief" defamation claim provided Defendant with sufficient notice at the pleading stage.

Defendant Cockson argues that his "on information and belief" claim in Count 1 of unspecified communication on unspecified dates to a long list of recipients is "far too vague" to establish a reasonable inference of any element of defamation. R. 22 at 30-31. Cockson's argument is misplaced.

Plaintiff Hopwood alleged broad dates and various means of communication "on information and belief" because he is not in possession of those communications because "Cockson actively prevented discovery of her conduct by communicating through private channels, directing her communications at institutions rather than at Hopwood directly, and refraining from any public disclosure of these private contacts until she made public posts in 2023." R. 15, at 22. Put differently, Hopwood had to allege a broad timeline with multiple forms of

communication because that information is not within his knowledge. And, in any event, Hopwood's well-plead Count One provides Cockson with sufficient notice of his claims, and he can provide more detail via an amended complaint once discovery occurs. The Rule 12(b)(6) stage is not the appropriate time to dismiss his on information and belief claim.

Multiple binding precedents make this point. At the motion to dismiss stage, a plaintiff must only plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombley*, 550 U.S. 544, 555 (2007). "[D]etailed factual allegations" are not necessary to withstand a Rule 12(b)(6) dismissal motion, and the complaint need only "contain sufficient factual matter, accepted as true, to state a claim for relief that is 'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And a complaint may plead on information and belief. *See Browning v. Clinton*, 292 F.3d 235, 243 (D.C. Cir. 2002) (citing 5 WRIGHT & MILLER, § 1224 at 205 (explaining that pleading on information and belief is appropriate unless special pleading requirements apply or the information is within the plaintiff's knowledge). Same here.

Defendant Cockson continues to confuse the standards of a motion to dismiss with those of summary judgment.

### J. Plaintiff Hopwood concedes that Cockson's argument about her statements to bar authorities are absolutely privileged.

Defendant's Cockson's argument that her statements to bar authorities are absolutely privileged is correct; even bad lawyering can land a dart on the board every now and then.

### III. Plaintiff Hopwood has adequately pleaded an intentional infliction of emotional distress claim.

Cockson argues that the IIED claim falls for the same reason as the defamation claims. Hopwood has, however, adequately pleaded the defamation claims.

Cockson next argues that her conduct cannot, as a matter of law, be outrageous enough because all she did was to call Hopwood "unflattering things." *Id.* As to the "Post-Service Retaliatory Campaign" from the justiceforjill email, Cockson argues that Hopwood fails to "credibly attribute a single one of the anonymous statements or actions making up this so-called retaliatory campaign to Ms. Cockson in anything more than a conclusory fashion." *Id.* at 32. With apologies, because this response is so repetitious, Cockson ignores Hopwood's factual allegations and his evidentiary burden on a Rule 12(b)(6) motion.

Hopwood alleged far more than that Cockson called him "unflattering things." She contacted his employers for over a decade with "fabricated accusations designed to destroy his career," published "false and highly inflammatory statements" about Hopwood having diagnosable mental illness and that he was being investigated and charged (and indeed committed) embezzlement on social media, lied to evade liability," orchestrated a "post-complaint campaign of anonymous threats, fabricated journalist impersonation, and ex parte false criminal accusations [about witness tampering] to Judge Arthur and federal prosecutors, all designed to destroy Hopwood's access to the courts while he was incarcerated and unable to respond." R. 15, at 32-33. These actions led to Hopwood experiencing physical and emotional stress, which was compounded by his incarceration status, and Cockson's post-service conduct created a "well-founded fear that Cockson's fabrications would color his criminal proceedings"—a fear that remains today. *Id.* at 33. And Cockson did so because of her vendetta and bad motive from an over 30-year-old breakup. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46 cmt. d (Am. L. Inst. 2012) (Whether a defendant's conduct is outrageous depends "on the facts of each case," including "the motivation of the [defendant]" and whether the plaintiff "was especially vulnerable and the [defendant] knew of the vulnerability.").

28

That is more than sufficient at this pleading stage. *See Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) ("Where reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether... the conduct has been sufficiently extreme and outrageous to result in liability."); *see also id.* at 820 ("Repeated harassment may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability."); *Carter v. Hahn*, 821 A.2d 890, 895 (D.C. 2003) (finding IIED for knowingly filing false information about plaintiff to police); *Liser v. Smith*, 254 F.Supp.2d 89, 106 (D.D.C. 2003) (finding IIED properly pled where it was alleged that police officers "fabricated facts" to support "continued detention"); *Kasem v. Wash. Hosp.*, 513 F.3d 251, 256 (DC Cir. 2008) (holding that IIED properly plead in case involving the "intentional filing of a false report about an employee" because false report could have harmed plaintiff's career and subjected him to criminal penalties); *Fells v. SEIU*, 281 A.3d 572, 587-88 (D.C. 2022) (holding that a jury could conclude that defendant's claims, including the false impression the plaintiff could had been ousted from his employment for sexual misconduct was actionable IIED claim).

### IV. Plaintiff Hopwood dismisses the intentional interference with prospective economic claim.

Plaintiff Hopwood agrees that Count 10 of the Amended Complaint should be dismissed.

### V. Plaintiff Hopwood has adequately pleaded a civil conspiracy claim.

Cockson raises a number of issues with Hopwood's pleaded civil conspiracy claim, that Hopwood: (1) makes only conclusory allegations; (2) fails to allege an agreement to commit an unlawful act; (3) cannot sue for harm to Mr. Boyer (his power-of-attorney and witness) and alleges no harm to himself; and (4) fails to allege an underlying tort for the conspiracy claim (Count 11). R. 22, at 36-42. But those arguments ignore the detailed factual allegations contained in the amended complaint.

Hopwood alleged an agreement between Cockson and unknown third parties to threaten and intimidate Mr. Boyer, Hopwood's power-of-attorney and fact witness, further defame and inflict emotional distress, influence his criminal case, and recruit third parties to do so. R. 15, at 34-36. Hopwood further alleged numerous overt acts that Cockson and her unknown co-conspirators took to carry out the scheme. *Id.* Although many courts "have to infer an agreement from indirect evidence in most civil conspiracy cases," *Halbertson v. Welch*, 705 F.3d 472, 486 (D.C. Cir. 2013), here Hopwood has alleged the specific agreement, which is all he must do at the pleading stage, given the Court must accept as true his allegations.

Hopwood alleged that the unlawful acts of the conspiracy were witness intimidation and the underlying torts were defamation and IIED. R. 15, at 34-36. And Hopwood alleged that the illegal conspiracy harmed his witness (and hence Hopwood's stake in this case), Hopwood's reputation, and caused him emotional and physical distress, and influenced his criminal case. *Id.* at 36. These are more than sufficient factual allegations at this stage of the case. Thus, Cockson's argument about Hopwood possessing "no evidence" is besides the point. R. 22, at 38.

### VI. Plaintiff Hopwood has adequately pleaded a witness intimidation conspiracy claim under 42 U.S.C. § 1985(2).

Cockson regurgitates many of the same arguments against Hopwood's § 1985 witness intimidation conspiracy claim. She claims that there was no "evidence" of an unlawful agreement, which is not needed at the pleading stage; that the injury must be to Hopwood, not a third party, even though Hopwood alleged several injuries to himself by Cockson's witness intimidation scheme in this very case; and that Hopwood does not allege any witness was "scared off" from testifying, which is not required and, in any event, Hopwood alleged that Boyer was intimidated due to his role as a fact witness. R. 22, at 43-44; *see also* Amended Complaint, R. 15, at 34-35

("threatening and intimidating Boyer into abandoning his role as Hopwood's attorney-in-fact and witness") (emphasis added).

## CONCLUSION

For the reasons set forth above, Defendant Cockson's motion to dismiss is meritless. It disregards the governing Rule 12(b)(6) standard, rests on an impermissible invitation to treat disputed facts and extra-record materials as "judicially established," and ignores binding precedent foreclosing her defenses, including her defamation-proof arguments, her claim of judicial immunity, and her statute-of-limitations contentions. When Plaintiff Hopwood's well-pleaded factual allegations are taken as true and the authorities are correctly applied, the Third Amended Complaint states timely, legally sufficient claims for defamation, defamation per se, intentional infliction of emotional distress, and conspiracy to intimidate witnesses.

Accordingly, Plaintiff respectfully requests that the Court deny Defendant Cockson's Motion to Dismiss the Third Amended Complaint in its entirety and permit this case to proceed to discovery and adjudication on the merits.

DATED: August 3, 2026

Respectfully submitted,

/s/ Shon Robert Hopwood
Shon Robert Hopwood
D.C. Central Detention Facility
1901 D Street, S.E.
Washington, D.C. 20003

31

Signature Page

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2026, I caused a true and correct copy of the foregoing

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to

Dismiss the Third Amended Complaint to be served upon counsel via email and first-class mail

for Defendant as follows:

Michelle S. Kallen (Bar No. 1030497)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
mkallen@steptoe.com

/s/ Shon Robert Hopwood
Shon Robert Hopwood
Plaintiff, pro se
D.C. Central Detention Facility
1901 D Street, S.E.
Washington, D.C. 20003

32