**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHON ROBERT HOPWOOD
DCDC#: 374088
Central Detention Facility
1901 D Street, S.E.
Washington, DC 20003,

Plaintiff,

v.

JILL COCKSON
1519 Cherry Street
Kansas City, MO 64108,

Defendant.

Civil Action No. 1:25-cv-04214-SLS

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Complaint Fails to Adequately Allege Defamation and False Light. ..... 3

A. Pleading that Ms. Cockson Dislikes Mr. Hopwood Does Not Show that Ms. Cockson Subjectively Knew that Any of the Challenged Statements Were Likely Untrue. ..... 3

B. Ms. Cockson Calling Her Violent Criminal Ex A "Psycho" Is Not Actionable. ..... 9

1. Mr. Hopwood's Listing of an Assortment of Words Out of Context Ignores the Relevant Standard. ..... 9

2. Calling One's Ex "Crazy" Is Protected Opinion. ..... 10

3. Because Ms. Cockson Did Not Assert Any Non-Public Basis for Her Views of Mr. Hopwood's Conduct as Criminal, Her Views as to His Guilt Are Protected Opinions. ..... 12

C. Mr. Hopwood's Convictions and Judicial Admissions Establish That the Gist of Ms. Cockson's Statements Is True and Defeat His Defamation Claims. ..... 13

1. Convictions and In-Court Admissions Are Judicially Noticeable. ..... 14

2. Collateral Estoppel Has Attached to Mr. Hopwood's Convictions, Regardless of the Possibility of Appeal. ..... 15

3. Mr. Hopwood's Convictions and Admissions Show That Any Supposed Inaccuracies Were Insubstantial as a Matter of Law. ..... 15

4. Mr. Hopwood's Infamy Is His Own Doing, Not Ms. Cockson's, So He Cannot Have Suffered More Damage to His Reputation Than His Convictions Establish He Deserved. ..... 17

D. D.C. Courts Would Not Apply a Discovery Rule to Publicly-Accessible, Searchable Social Media Posts. ..... 18

E. Count I Is Too Vague to Be Actionable. ..... 20

F. The Alleged Statements to Courts and Bar Authorities Are Privileged from Defamation Liability. ..... 20

II. The Intentional Infliction of Emotional Distress Claim Likewise Fails and Does Not Meet the High Bar for "Outrageousness." ..... 21

III. Mr. Hopwood Does Not Meaningfully Respond to the Motion's Arguments Regarding Conspiracy. ..... 23

IV. Mr. Hopwood Does Not Identify Additional Facts He Could Plead, So Dismissal Should Be with Prejudice. ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Moore*,
984 S.W.2d 224 (Tenn. Ct. App. 1998) .......... 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 20, 24

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013) .......... 6

*Brown v. Shimabukuro*,
118 F.2d 17 (D.C. Cir. 1941) .......... 21

*Capitol Intel. Grp. Inc. v. Waldman*,
352 A.3d 783 (D.C. 2026) .......... 8

*Carey v. Piphus*,
435 U.S. 247 (1978) .......... 13

*Carter v. Hahn*,
821 A.2d 890 (D.C. 2003) .......... 22, 23

*Cerasani v. Sony Corp.*,
991 F. Supp. 343 (S.D.N.Y. 1998) .......... 15

*Couch v. Verizon Commc'ns Inc.*,
105 F.4th 425 (D.C. Cir. 2024) .......... 3, 4

*Crespo v. 1215 CT LLC*,
No. 1:22-CV-3801 (TNM), 2023 WL 11704907 (D.D.C. May 2, 2023) .......... 19

*Dunn v. Martelli*,
No. 26-CV-10002 (IT), 2026 WL 2558339 (D. Mass. July 30, 2026) .......... 5, 6

*Fells v. Serv. Emps. Int'l Union*,
281 A.3d 572 (D.C. 2022) .......... 23

*Goetz v. Kunstler*,
164 Misc. 2d 557 (Sup. Ct. 1995) .......... 12

*Goldwater v. Ginzburg*,
414 F.2d 324 (2d Cir. 1969) .......... 10

*Gray v. Harco, Inc.*,
No. 22-CV-1393 (TSC), 2024 WL 3026537 (D.D.C. June 17, 2024) .....19

*Guilford Transp. Indus., Inc. v. Wilner*,
760 A.2d 580 (D.C. 2000) .....13

*Homan v. Goyal*,
711 A.2d 812 (D.C. 1998), *amended*, 720 A.2d 1152 (D.C. 1998) .....22, 23

*Hunt v. Liberty Lobby, Inc.*,
707 F.2d 1493 (D.C. Cir. 1983) .....15, 16, 17

*Hurd v. D.C. Gov't*,
864 F.3d 671 (D.C. Cir. 2017) .....14

*Jacoby v. Cable News Network, Inc.*,
No. 21-12030, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) .....5

*Jankovic v. Int'l Crisis Group*,
822 F.3d 576 (D.C. Cir. 2016) .....4, 8, 14

*Jankovic v. Int'l Crisis Grp.*,
494 F.3d 1080 (D.C. Cir. 2007) .....14

*Johnson v. Paragon Sys., Inc.*,
195 F. Supp. 3d 96 (D.D.C. 2016) .....22

*Jones v. Globe Int'l Inc.*,
No. 3:94:CV01468 (AVC), 1995 WL 819177 (D. Conn. Sept. 26, 1995) .....15

*Jordan v. Washington Metro. Area Transit Auth.*,
548 A.2d 792 (D.C. 1988) .....15

*Kareem v. Haspel*,
986 F.3d 859 (D.C. Cir. 2021) .....20

*Kassem v. Washington Hosp. Ctr.*,
513 F.3d 251 (D.C. Cir. 2008) .....23

*King v. Barbour*,
No. CV 16-727 (CKK), 2019 WL 3945281 (D.D.C. Aug. 21, 2019) .....12

*Klayman v. City Pages*,
No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015),
*aff'd*, 650 F. App'x 744 (11th Cir. 2016) .....4

*Langer v. George Washington Univ.*,
498 F. Supp. 2d 196 (D.D.C. 2007) .....23

*Liberty Lobby. Carpenter v. King*,
792 F. Supp. 2d 29 (D.D.C. 2011), *aff'd* 473 F. App'x 4 (D.C. Cir. 2012)............................17

*Liser v. Smith*,
254 F. Supp. 2d 89 (D.D.C. 2003)..........................................................................................23

*Mirza v. Amar*,
514 F. Supp. 3d 292 (E.D.N.Y. 2021)........................................................................................5

*Moldea v. New York Times Co.*,
22 F.3d 310 (D.C. Cir. 1994)...........................................................................................16, 17

*Monge v. Univ. of Pennsylvania*,
No. CV 22-2942, 2023 WL 4032661 (E.D. Pa. June 14, 2023)..............................................5

*Nader v. The Democratic Nat'l Committee*,
555 F. Supp. 2d 137 (D.C. 2008)............................................................................................21

*Oparaugo v. Watts*,
884 A.2d 63 (D.C. 2005)........................................................................................................18

*Parsi v. Daioleslam*,
890 F. Supp. 2d 77 (D.D.C. 2012)............................................................................................7

*Powers v. U.S.*,
588 A.2d 1166 (D.C. 1991)....................................................................................................21

*Rapaport v. Barstool Sports, Inc.*,
No. 18 CIV. 8783 (NRB), 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021), *aff'd,*
No. 22-2080-CV, 2024 WL 88636 (2d Cir. Jan. 9, 2024)................................................12, 13

*Ratchford v. Cafe Dupont, LLC*,
No. 24-CV-2062 (DLF), 2025 WL 2374501 (D.D.C. Aug. 14, 2025)...................................19

*St. Amant v. Thompson*,
390 U.S. 727 (1968)..................................................................................................................8

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987)...................................................................................................4

*Tooley v. Napolitano*,
586 F.3d 1006 (D.C. Cir. 2009)...............................................................................................20

*Vindman v. Trump*,
No. CV 22-257 (JEB), 2022 WL 16758575 (D.D.C. Nov. 8, 2022).........................................4

*Weyrich v. New Republic, Inc.*,
235 F.3d 617 (D.C. Cir. 2001)......................................................................................9, 10, 11

*Wood v. Am. Fed'n of Gov't Emps.*,
316 F. Supp. 3d 475 (D.D.C. 2018) ....................4

**Statutes**

42 U.S.C. § 1985(2) ....................24

**Other Authorities**

1 Rodney A. Smolla, Law of Defamation § 3:65.50 (2013) ....................6

**INTRODUCTION**

Nothing in Mr. Hopwood's opposition cures the deficiencies identified in the motion to dismiss. Mr. Hopwood sued Ms. Cockson (his high school ex-girlfriend) for calling him a "sociopath," "psycho," "monster," "narcissist," and assorted similar epithets online. The opposition brief does not overcome the complaint's failure to allege actual malice, identify actionable statements of fact rather than opinion, or surmount the other independent defects discussed in the motion.

Start with actual malice. Mr. Hopwood admits he is at least a limited-purpose public figure who must plausibly plead that Ms. Cockson subjectively knew that her statements were false when she made them. Yet his opposition brief identifies only that Ms. Cockson dislikes him, has not spoken to him since before his bank robbery convictions, and rebuffed Mr. Hopwood's attempt to persuade her that his transfers of funds from a joint business account to an account under his exclusive control while abusing his wife did not constitute embezzlement. None of those allegations support a plausible inference that Ms. Cockson knew any particular statement was false. Courts have been quite clear that disliking someone, even intensely, does not establish actual malice. Nor does Mr. Hopwood identify any authority holding that allegations of this kind suffice to plead subjective knowledge of falsity.

Likewise, Mr. Hopwood cannot escape the basic flaw that his claim depends on vague epithets—classic statements of opinion that imply no discernable *facts*, let alone ones whose substantially untrue ones. Calling one's ex "crazy" is not actionable, and spicing that description with terms like "certifiable," "sociopath," or "narcissist" does not turn the use of vague uncomplimentary epithets into something that makes a reasonable reader infer any specific fact

about Mr. Hopwood. Mr. Hopwood points to no authority deeming this sort of nebulous insult actionable.

Either of those two points alone is enough to dispose of Mr. Hopwood's libel, false light, and IIED-by-defamation claims. Mr. Hopwood is wrong on his other arguments too. The extent and variety of Mr. Hopwood's convictions and public admissions of wrongdoing make this the rare case where judicially-noticeable facts establish either that Mr. Hopwood is not entitled to a reputation any better than the one his crimes have earned him or Mr. Hopwood cannot have been damaged any further by vague statements on obscure corners of social media. Vague allegations that Ms. Cockson said unspecified things to unspecified people on unspecified dates fail to satisfy basic pleading standards. And the courts rejecting a discovery rule for defamation, at least for publicly-accessible statements like on social media, have the better read of D.C. law. But the Court need not reach any of those issues unless it wishes to.

And notably, Mr. Hopwood concedes that his tortious-interference-by-defamation claim should be dismissed. ECF No. 28 at 29.

Finally, Mr. Hopwood's defense of his conspiracy theory that Ms. Cockson is secretly controlling third parties who allegedly sent improper messages to someone other than Mr. Hopwood is cursory; these allegations are plainly deficient and Mr. Hopwood has not suffered any actionable harm.

Mr. Hopwood's complaint against his high school ex-girlfriend for calling him epithets amid his highly-publicized domestic abuse trial and convictions is plainly an attempt to use this case to distract from his convictions and lash out at Ms. Cockson for her public support for Mr. Hopwood's soon-to-be-ex-wife, Ms. Metzner Hopwood. The Third Amended Complaint should be dismissed with prejudice.

# ARGUMENT

## I. The Complaint Fails to Adequately Allege Defamation and False Light.

Mr. Hopwood fails in his attempt to justify Counts 1–8, alleging that a series of statements—some of unspecified content to unspecified people on unspecified dates, others an assortment of colorful epithets Ms. Cockson allegedly used to describe Mr. Hopwood in a few social media posts—constituted defamation and false light. Mr. Hopwood admits he is at least a limited-purpose public figure and must plead and prove subjective knowledge of falsity to succeed. And he cannot do so; all he can really allege is that Ms. Cockson dislikes him and believes he is dangerous. Likewise, even for the statements Mr. Hopwood directly challenges, he fails to show that any of the vague epithets contain enough verifiable factual content to be proven substantially false. Fundamentally, Mr. Hopwood complains that Ms. Cockson told people she has a low opinion of him—that would not be actionable even were it not for Mr. Hopwood's extensive criminal record and admissions showing that the essential "sting" of Ms. Cockson's words is substantially true.

### A. Pleading that Ms. Cockson Dislikes Mr. Hopwood Does Not Show that Ms. Cockson Subjectively Knew that Any of the Challenged Statements Were Likely Untrue.

Mr. Hopwood concedes he is at least a limited-purpose public figure. ECF No. 28 at 22. Thus, as the case he cites notes, he must show that "the allegedly defamatory statements were made with either actual knowledge that the statements were false, or reckless disregard of the statements' accuracy," the latter meaning that Ms. Cockson must have "either had a high degree of awareness of probable falsity or entertained serious doubts as to the truth of their statements." *Couch v. Verizon Commc'ns Inc.*, 105 F.4th 425, 432 (D.C. Cir. 2024) (internal quotations omitted). And, while he points out a quote from that case that on a motion to dismiss he need not "do any more than plead sufficient facts to plausibly state his claim," he omits what the D.C.

Circuit said immediately after: courts "may still peer down the road towards a plaintiff's eventual evidentiary burden to deduce whether he plausibly alleged the types of facts that can, if proven, satisfy that burden." *Id.* So, a plaintiff in a public-figure case "must allege facts that, if proven, would show that the defendants either knew their statements were false, had high awareness that the statements were probably false, or had serious doubts about the accuracy of the statements." *Id.* Mr. Hopwood does not dispute the D.C. Circuit's description of this standard as "daunting," *Jankovic v. Int'l Crisis Group*, 822 F.3d 576, 590 (D.C. Cir. 2016), and that it requires "that the defendant in fact harbored subjective doubt." *Id.* Much as in *Couch*, "[h]e has not done so." 105 F.4th at 432. Instead, Mr. Hopwood's opposition identifies various allegations that a long line of cases have held are not enough.

***"Bitter" Ex***. Mr. Hopwood argues that Ms. Cockson is "bitter" about the end of their relationship in the early 1990s and thus theorizes that seemingly every statement he challenges is one "sorts of that she made up and knew were false." ECF No. 28 at 22. But these vague assertions of dislike are not enough, and Mr. Hopwood makes no effort to distinguish the long list of cases Ms. Cockson previously cited that say so. ECF No. 22 at 25–26. These are the classic allegations of "ill will" that do not add up to subjective doubt about veracity. *See id.* (citing, among many others, *Vindman v. Trump*, No. CV 22-257 (JEB), 2022 WL 16758575, at *10 (D.D.C. Nov. 8, 2022), and *Wood v. Am. Fed'n of Gov't Emps.*, 316 F. Supp. 3d 475, 484 (D.D.C. 2018)). Tropes that an ex is supposedly "bitter" are insufficient without far more to infer knowledge of falsity. *See Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) ("[E]vidence of ill will or bad motives will support a finding of actual malice only when combined with other, more substantial evidence of a defendant's bad faith"); *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *15 (M.D. Fla. Apr. 3, 2015) (allegation that writer had "bitter

intent" was irrelevant because it "confuses actual malice with common law malice"), *aff'd*, 650 F. App'x 744 (11th Cir. 2016).

Nor do conclusory assertions that statements are "made up" or "fabricated" suffice. ECF No. 28 at 22–23. Courts have consistently recognized that asserting that a challenged statement is fabricated adds nothing. *See*, *e.g.*, *Jacoby v. Cable News Network, Inc.*, No. 21-12030, 2021 WL 5858569, at *5 (11th Cir. Dec. 10, 2021) (allegation of "intention to fabricate" was conclusory); *Monge v. Univ. of Pennsylvania*, No. CV 22-2942, 2023 WL 4032661, at *6 (E.D. Pa. June 14, 2023) (allegation that defendant "acted with full knowledge that he was falsifying information" was conclusory). Emphasizing the conclusory nature of these allegations, Mr. Hopwood does not allege any specific instances of deliberate fabrication. He does not show that Ms. Cockson ever referred to a specific factual incident that did not occur. He does not establish that Ms. Cockson somehow had knowledge of what was inside his mind to know that he is (supposedly) not a narcissist or a sociopath and said it anyway. In other words, his allegations of fabrication are the classic types of bare labels that do not suffice to plausibly plead subjective knowledge of falsity.

***Not a Psychiatrist.*** Mr. Hopwood's theory that lacking psychiatric qualifications renders opining that one's ex is "certifiable," a "narcissist," a "sociopath," or other choice epithets knowingly false likewise fails to show subjective awareness of likely falsity. ECF No. 28 at 23. Much as the nebulous and subjective nature of this sort of psychobabble render it too vague to be actionable as discussed below, the fact that Ms. Cockson is not a psychiatrist renders it *more* likely that she did not know her armchair diagnoses were supposedly false. *See Mirza v. Amar*, 514 F. Supp. 3d 292, 299 (E.D.N.Y. 2021) (a layperson's use of the word "sociopath" was "hyperbole and fiery rhetoric," not actionable defamation); *Dunn v. Martelli*, No. 26-CV-10002 (IT), 2026 WL 2558339, at *9 (D. Mass. July 30, 2026) (epithets such as "narcissistic" and "no

empathy", even when spoken by a social worker, are non-actionable opinions, and the "term narcissism has long ago passed into general usage"), *report and recommendation adopted*, 2026 WL 2554760 (D. Mass. Aug. 28, 2026). It does not remotely support an inference that she knew that her statements were false.

***Lack of Contact Since 1993.*** The same goes for Mr. Hopwood's allegation that Ms. Cockson has not spoken to him in more than three decades. ECF No. 28 at 23. Nothing in Ms. Cockson's statements purports to arise from recent experience with Mr. Hopwood, and even Mr. Hopwood admits that Ms. Cockson knew him around the time he committed the armed bank robberies that later resulted in his convictions. Third Amended Complaint, ECF No. 19 ("TAC") ¶ 16. That circumstance does not support an inference that Ms. Cockson knew any of the challenged statements were false. If anything, it explains why she may have continued to view Mr. Hopwood much as she did when she knew him. Nothing required Ms. Cockson to accept at face value Mr. Hopwood's assertion that he had changed in the decades since. *See* ECF No. 22 at 27 (citing *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281–82 (S.D.N.Y. 2013) and 1 Rodney A. Smolla, Law of Defamation § 3:65.50 (2013)). Ms. Cockson is entitled to her pessimistic view of Mr. Hopwood, and she is not required to accept Mr. Hopwood's assurances about his supposedly reformed character—especially in light of his recent arrest, trial, and conviction for domestic abuse. At most, these allegations suggest that Ms. Cockson believed her own assessment of Mr. Hopwood rather than his assessment of himself. They do not support a plausible inference that she subjectively knew any challenged statement was false.

***Supposed Prior and Subsequent Statements Consistent with Challenged Statements.*** Mr. Hopwood's assertion that Ms. Cockson is behind third parties contacting Mr. Boyer or the court in Mr. Hopwood's criminal case rests on a series of unsupported inferences. ECF No. 28 at

23. But even assuming the allegation was credited, it would not support an inference of actual malice. To the contrary, evidence that Ms. Cockson allegedly made similar statements before or after the challenged statements would tend to show that she consistently held those views, not that she subjectively believed them to be false. At most, the allegation suggests that Ms. Cockson continued to believe what she was saying about Mr. Hopwood. It does not support a plausible inference that she knew any challenged statement was false when made.

***Whether Mr. Hopwood Transferring Money from a Joint Account was "Embezzlement."*** Finally, Mr. Hopwood points to a short exchange in which he quibbled with Ms. Cockson's characterization of court documents she had read about Mr. Hopwood's transfer of funds from a joint account with his victim to an account under his sole control as "embezzlement." ECF No. 28 at 23. Mr. Hopwood concedes the underlying facts about the money transfers, but disagrees with Ms. Cockson's use of the term "embezzlement." ECF No. 28 at 11. He does not attempt to distinguish the authorities Ms. Cockson cited that hold that imprecise use of legal terms of art in laypeople's conversations does not suggest knowledge of falsity rising to the level of actual malice. *See*, *e.g.*, *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012). Nor does he point to anything that suggests that Ms. Cockson's belief is insincere; to the contrary, Ms. Cockson's reaction to his quibbling with the label is *consistent* with her sincerity. Fundamentally, what he pleads is that Ms. Cockson *sincerely believed* that Mr. Hopwood's movement of money from an account his victim could access to an account she could not access was a form of financial abuse, consistent with his broader abuse of Ms. Metzner Hopwood. That does not support an inference that Ms. Cockson knew that she was factually inaccurate; it underscores the sincerity of her belief that Mr. Hopwood coupled financial abuse with his physical abuse.

None of the authorities Hopwood cites are to the contrary. Most simply recite the governing standard for actual malice. Mr. Hopwood cites *St. Amant v. Thompson* for the proposition that a "story" that is "fabricated by the defendant" can support actual malice. 390 U.S. 727, 732 (1968). The problem is not the legal standard. It is that the TAC identifies no facts plausibly suggesting that Ms. Cockson disbelieved the challenged statements when she made them. Describing those statements as "fabricated" is a conclusion; it is not a substitute for factual allegations supporting subjective knowledge of falsity.

He cites *Jankovic v. Int'l Crisis Grp.*, but that case holds that an allegation of ill will "is insufficient by itself to support a finding of actual malice" and "[o]nly when the evidence of ill will or bad motive is also probative of a 'willingness to publish *unsupported allegations*' is it suggestive of actual malice." 822 F.3d 576, 590 (D.C. Cir. 2016). That supports Ms. Cockson: Mr. Hopwood alleges that Ms. Cockson dislikes him, but he does not plead anything to suggest that she subjectively disbelieves anything she has said about him. Likewise, *Capitol Intel. Grp., Inc. v. Waldman* supports Ms. Cockson. 352 A.3d 783, 800 (D.C. 2026) (holding that "mere unreasonableness is not actual malice" and "[n]othing in the record demonstrates that [the defendant] made up his fraud allegations or was simply trying to punish [the plaintiff] through falsehood he knew or strongly suspected was false"). Here, Mr. Hopwood does not plead *facts* from which one could infer that Ms. Cockson was doing anything other than sharing what she sincerely believed about Mr. Hopwood.

⁂

Ultimately, Mr. Hopwood's Third Amended Complaint alleges that Ms. Cockson holds strongly negative opinions about Mr. Hopwood. It does not support a plausible inference that any particular challenged statement was one that she subjectively disbelieved or seriously doubted.

On the contrary, the allegations Mr. Hopwood identifies in his brief are either conclusory or facially suggest Ms. Cockson honestly believed what she was saying. That does not add up to a plausible inference of subjective knowledge of falsity or serious subjective doubts. That is enough to dispose of all the defamation and relabeled-defamation counts.

### B. Ms. Cockson Calling Her Violent Criminal Ex A "Psycho" Is Not Actionable.

Independently, Mr. Hopwood's libel and false light claims fail because none of the statements he identifies reasonably implies false *facts*, as opposed to Ms. Cockson's low opinion of Mr. Hopwood. Nothing in Mr. Hopwood's brief suggests otherwise.

#### 1. Mr. Hopwood's Listing of an Assortment of Words Out of Context Ignores the Relevant Standard.

To start, Mr. Hopwood's brief focuses entirely on single words or phrases without considering their context. ECF No. 28 at 17. But as the D.C. Circuit has noted in its leading case holding that use of psychological terms was an expression of opinion rather than of fact, "[i]n deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact about [a plaintiff], the court must consider the statement in context." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001). Nor does Mr. Hopwood respond to the authorities that Ms. Hopwood cited holding that social media context often suggests to a reader that a speaker is making loose opinionated statements rather than trying to convey specific, verifiable facts. ECF No. 22 at 20. That makes sense: a phrase used in a statement purporting to convey particular incidents that occurred on particular dates is more likely to convey to the reader that it is saying something objectively verifiable; the same phrase used in the context of calling one's ex "crazy" in a variety of ways is much less likely to be viewed as a statement of objective fact as opposed to the speaker's subjective low opinion. And the statements challenged here are well on the "calling one's ex crazy" side of that line and do not purport to narrate

specific, verifiable factual information. They convey that Ms. Cockson is, to say the least, not a fan of Mr. Hopwood. They do not insert into the public record any discernable new factual claims, let alone ones that are untrue.

**2. Calling One's Ex "Crazy" Is Protected Opinion.**

Mr. Hopwood argues, relying exclusively on *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969), that Ms. Cockson's use of a wide variety of psychological terminology like "narcissist," "sociopath," "psychopath," "certifiable," and "textbook" to describe him implies that she is *literally* diagnosing him with various medical conditions that he claims not to have and implying that he is dangerous. ECF No. 28 at 18–19. Given Mr. Hopwood's extensive criminal record, his contention that it is defamatory to suggest that he is a dangerous criminal rests on a premise that is difficult to square with facts established by court judgments. At any rate, Mr. Hopwood fails to respond to Ms. Cockson's argument that reasonable people understand that psychology-derived terms are routinely used colloquially; no reasonable reader would interpret a layperson on social media calling someone a narcissist as literally meaning "diagnosed by a qualified professional with narcissistic personality disorder" as opposed to an unverifiable statement akin to "crazy" or "nuts." *See Weyrich*, 235 F.3d at 624 (used colloquially, the words "paranoia," "crazy," and "nutty" do not convey false facts).

Though Mr. Hopwood cites *Goldwater*, he glosses over its actual analysis. The facts there were extreme: an editor decided in advance to write a "psychological profile" about "an old enemy of yours" wherein, before conducting any research, he would say that "Goldwater is so belligerent, suspicious, hot-tempered, and rigid because he has deep-seated doubts against his masculinity." 414 F.2d at 329. The writer had decided to say "that Senator Goldwater was suffering from paranoia and was mentally ill" before sending an unscientific "poll" to a list of psychiatrists asking them to comment on his "aggressive behavior and destructiveness,"

"callous[ness]," "public temper-tantrums," and "nervous breakdowns." *Id.* at 329–30. The ultimate article made repeatedly clear it was literally diagnosing Goldwater with paranoia and was accompanied by a companion piece called "What Psychiatrists Say About Goldwater," which actually modified what several of the responses said to "delete[]" any "[s]tatements favorable to Senator Goldwater," including "especially statements casting doubt on the assertion that the Senator had suffered nervous breakdowns." *Id.* at 331–34. It was a case in which the defendants went out of their way to emphasize that they were *literally* diagnosing Senator Goldwater with a medical condition and *literally* saying that many trained psychiatrists agreed with them. It is, therefore, unsurprising that the opinion does not discuss the possibility that a reasonable reader would view the statements as meaning anything else.

Mr. Hopwood does not point to parallels here, because there are none. Ms. Cockson did not say that any psychiatrist *had* diagnosed Mr. Hopwood, nor did she point to particular psychiatric qualification. That is why Mr. Hopwood's effort to distinguish *Weyrich*—where the D.C. Circuit pointed out that a psychological terms like "paranoid," "crazy," and "nutty" "have taken on a less-than-definitive popular meaning"—falls flat. *Weyrich*, 235 F.3d at 623–24. Mr. Hopwood points to nothing in the challenged statements that suggests readers would understand these terms as assertions of objective psychiatric fact rather than as rhetorical expressions of Ms. Cockson's personal views about him. Indeed, Mr. Hopwood does not attempt to distinguish the numerous other authorities Ms. Cockson cited holding that statements that one's antagonist is crazy or insane or dangerous or the like is far too vague and unfalsifiable to be an actionable statement of fact. *See* ECF No. 22 at 21–22. When people call their exes "crazy" or a "psycho," people interpret that as statement of disdain, not a statement of a literal psychiatric diagnosis. So too here. These statements are far too subjective to be actionable.

### 3. Because Ms. Cockson Did Not Assert Any Non-Public Basis for Her Views of Mr. Hopwood's Conduct as Criminal, Her Views as to His Guilt Are Protected Opinions.

Mr. Hopwood's arguments about Ms. Cockson's use of terms like "witness tampering" or "embezzlement" to describe Mr. Hopwood's abuse of Ms. Metzner Hopwood are similarly protected opinions because none of them imply any factual basis for her views other than the public evidence against him.

Mr. Hopwood argues that Ms. Cockson's use of the word "witness tampering" implies specific facts, ECF No. 28 at 17–18, but, given that he has been convicted of obstructing justice and contempt of a restraining order for scaring his victim into not showing up for trial, whether that label implies any facts is irrelevant because Mr. Hopwood was literally convicted of witness tampering. *See King v. Barbour*, No. CV 16-727 (CKK), 2019 WL 3945281, at *6 (D.D.C. Aug. 21, 2019) (discussing collateral estoppel effect of criminal conviction).

At any rate, expressing an opinion that someone publicly charged with wrongdoing is guilty of it is an opinion. In context, Ms. Cockson did not imply she had any special, undisclosed knowledge of Mr. Hopwood's guilt; rather, she expressed her belief that the allegations against him were true. That is not actionable because it does not imply that Ms. Cockson has any undisclosed factual basis for her opinion that the publicly available evidence against Mr. Hopwood shows him to be guilty. *See*, *e.g.*, *Goetz v. Kunstler*, 164 Misc. 2d 557, 562 (Sup. Ct. 1995) (statement that well-known acquitted subway shooter was a "murderous vigilante" was an opinion "that does not imply the existence of undisclosed underlying facts" even if it disagreed with the jury's verdict); *Rapaport v. Barstool Sports, Inc.*, No. 18 CIV. 8783 (NRB), 2021 WL 1178240, at *22 (S.D.N.Y. Mar. 29, 2021) (erroneous interpretation of criminal charges against plaintiff was still protected opinion where "none of the statements reasonably implies that the speakers' opinions rest on undisclosed defamatory facts"), *aff'd,* No. 22-2080-CV, 2024 WL

88636 (2d Cir. Jan. 9, 2024). Ms. Cockson did not claim to have any secret knowledge of Mr. Hopwood's guilt in trying to prevent Ms. Metzner Hopwood from testifying; she said she believed the public evidence—as the jury ultimately did.[1]

The same goes for Mr. Hopwood's argument that referring to his money transfers into an account over which he had sole access as "embezzlement" implied false facts. ECF No. 28 at 17–18; Ms. Cockson expressly noted that she was reacting to documents in Mr. Hopwood's criminal case, so even if she was wrong in her interpretation, she was not implying to readers she had any secret knowledge behind her opinion that the withdrawal of funds was embezzlement but simply giving her take on the public record. *See Rapaport*, 2021 WL 1178240 at *18. None of the cases Mr. Hopwood cites hold otherwise. Principally, they say that some narrow categories of false statements of fact do not require proof of special damages, but that does not answer the question of whether there was a statement *of fact* in the first place. *Carey v. Piphus*, 435 U.S. 247, 262 (1978) (discussing concept of defamation *per se* while calling it an "oddity of tort law"); *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 600 (D.C. 2000) (mentioning defamation per se doctrine briefly while discussing the Railway Labor Act).

**C. Mr. Hopwood's Convictions and Judicial Admissions Establish That the Gist of Ms. Cockson's Statements Is True and Defeat His Defamation Claims.**

Even if Ms. Cockson's use of these vague labels did imply any verifiable facts, Mr. Hopwood cannot show that any of them are untrue to such an extent that they would meaningfully worsen his reputation beyond what the truth would or, for that matter, that they could damage his reputation beyond what was already judicially established or admitted.

[1] Tellingly, while Mr. Hopwood alleges that certain of Ms. Cockson's statements about him being crazy are attributed to her personal experiences with him, *see* TAC ¶¶ 26, 29, her statements of belief in his guilt are not accompanied by any similar claim of personal knowledge.

**1. Convictions and In-Court Admissions Are Judicially Noticeable.**

Mr. Hopwood argues that, without converting this motion to summary judgment, this Court may not consider anything other than his complaint, which avoids mentioning his recent series of convictions, and cannot consider his convictions or what he has said in open court. ECF No. 28 at 8–11. That is wrong. Convictions are judicially noticeable and indeed collaterally estop Mr. Hopwood from denying the facts that the criminal jury found; a party's explicit in-court admissions are generally subject to judicial notice as well. ECF No. 22 at 13, 18 n.6. Mr. Hopwood does not attempt to address any of the cases that Ms. Cockson cited on these issues.

Mr. Hopwood instead relies exclusively on *Hurd v. D.C. Gov't*, where the D.C. Circuit held it was improper for a court to rely on evidence that the government filed in a prior habeas case as judicially noticeable on a motion to dismiss and dispositive of a "highly contextual, case-specific question of whether Hurd's post-release conduct rendered him ineligible for relief" after he was re-incarcerated without a proper opportunity to challenge it. 864 F.3d 671, 686 (D.C. Cir. 2017). But, by its own terms, that case explicitly does not call into question judicial notice where the elements of collateral estoppel are satisfied. *Id.* Thus, it does not call into question taking notice of Mr. Hopwood's convictions as a basis for collateral estoppel. *Cf.* Nor does it question "dr[a]w[ing] on a filing in an unrelated case as a record of what was said"—citing "a defamation case" on this point. *Id.* (citing *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007)). And the portion of *Jankovic* that *Hurd* cites allowed "consideration of what [plaintiff] himself filed in court" in another action. *Id.* That is what Ms. Cockson asks for here—considering what Mr. Hopwood admitted publicly, under oath, in another action.

And at any rate, leaving aside the convictions—which have collateral estoppel effect and thus can be used to establish that what the jury found was true—determining the reputation that Mr. Hopwood would have had but for Ms. Cockson's statements requires only determining what

was said, not whether it is true. Thus, courts have taken judicial notice of a defendant's convictions and on-the-stand admissions at a criminal trial to conclude that it is implausible that a challenged statement could do any more damage to his reputation than what is already in the public record. *Jones v. Globe Int'l Inc.*, No. 3:94:CV01468 (AVC), 1995 WL 819177, at *10 (D. Conn. Sept. 26, 1995). Courts have likewise found it proper to take notice of convictions, the fact of testimony at trial, and the fact that similar or worse allegations against a libel plaintiff have been "widely disseminated" to deem it "incredible" that a challenged statement could further damage the plaintiff's reputation. *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 (S.D.N.Y. 1998). After all, for it to be plausible that a supposed falsehood damaged Mr. Hopwood's reputation, his reputation but for the statement matters.

### 2. Collateral Estoppel Has Attached to Mr. Hopwood's Convictions, Regardless of the Possibility of Appeal.

Mr. Hopwood alternatively argues that his convictions should not be considered because he is awaiting sentencing (his motion for a new trial has now been denied) and could appeal. ECF No. 28 at 14–15. Because Mr. Hopwood's sentencing is a few weeks away, his first argument will be overtaken by events shortly. As to the second point, "[t]he pendency of an appeal, however, does not alter the res judicata or collateral estoppel effect of a judgment or order." *Jordan v. Washington Metro. Area Transit Auth.*, 548 A.2d 792, 795 n.4 (D.C. 1988) (citing *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497–98 (D.C. Cir. 1983)).

### 3. Mr. Hopwood's Convictions and Admissions Show That Any Supposed Inaccuracies Were Insubstantial as a Matter of Law.

Given that Mr. Hopwood's convictions and admissions are judicially noticeable, he cannot possibly establish substantial falsity. While he tries briefly to distinguish between the significance of what Ms. Cockson said and what the jury found, these are, as in *Jones*, classic examples of minor quibbles that do not change the sting of the truth as established by Mr.

Hopwood's convictions. ECF No. 28 at 16–17. There is no difference in effect on Mr. Hopwood's reputation in the eyes of a reasonable reader between being a serial violent criminal, on the one hand, and having a personality disorder that often manifests itself through committing violent crimes, on the other. The principal sting of a person being called a "sociopath" or a "psychopath" is the suggestion that the person is dangerous or violent, and the jury's verdict supports that conclusion. Nor is there a meaningful difference between being an "embezzler" and a convicted abuser who admitted to transferring money to a place his victim could not access it. The accusation of financial abuse arose in the context of an extensive record of physical abuse, violation of restraining orders, and coercing Ms. Metzner Hopwood to not appear for trial. And when one adds the history of serial bank robbery, the truth is worse than what Ms. Cockson said.

Nor is this the sort of case where Mr. Hopwood is accused of an entirely different sort of crime. *Cf. Moldea v. New York Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) (dealing with the libel-proof doctrine rather than substantial truth). Ms. Cockson's accusations against Mr. Hopwood fall within the same general categories as one or more of his convictions—violence, obstructing justice, theft. None of the statements accuse Mr. Hopwood of a materially different category of crime, like sexual offenses, or a materially worse degree of violence, like murder. These are simply not the kinds of distinctions that make a difference. Thus, while in *Moldea* and *Liberty Lobby*, Benedict Arnold might have committed crimes against allegiance—treason—but still have a protectible interest in not being accused of committing crimes against property, here, all the crimes are within the same general categories. So the gist or sting—that Mr. Hopwood is violent, has stolen, and has obstructed justice—is supported by his convictions. The differences are too insubstantial to meaningfully affect Mr. Hopwood's reputation in the eyes of reasonable beholders.

**4. Mr. Hopwood's Infamy Is His Own Doing, Not Ms. Cockson's, So He Cannot Have Suffered More Damage to His Reputation Than His Convictions Establish He Deserved.**

Next, Mr. Hopwood contends at length that this Court cannot treat him as libel-proof because he claims that doctrine does not exist under D.C. law as interpreted in *Liberty Lobby*. ECF No. 28 at 12–14. This Court need not reach the libel-proof plaintiff issue because numerous other independent grounds exist to dismiss the claims. But, in any event, Mr. Hopwood is wrong.

This Court has recognized the continuing viability of the doctrine long after *Liberty Lobby*. *Carpenter v. King*, 792 F. Supp. 2d 29, 34 n.2 (D.D.C. 2011) ("a plaintiff may be deemed 'libel-proof' as a matter of law"), *aff'd* 473 F. App'x 4 (D.C. Cir. 2012).[2] While *Liberty Lobby* may have rejected the theory that a person convicted of crimes has *no* protectible reputation at all, it does not reject the doctrine altogether. And, as discussed above, Mr. Hopwood's extensive and varied criminal record here—and the similarity between the crimes of which he has been convicted and whatever factual implication he contends exists from Ms. Cockson's statements—he cannot have suffered any further harm to his reputation here.

Likewise, Mr. Hopwood argues that he had a reputation left to damage because he had not yet been *convicted* of crimes he had *already committed*. ECF No. 28 at 14. In essence, Mr. Hopwood argues he is entitled to damages for any *undeservedly positive* reputation he had because his existing crimes had not yet been fully publicized through his trial and convictions. Courts have rejected similar arguments seeking damages for unearned reputations. For example, when a plaintiff was later convicted of rape and attempted bribery, he could not sue for libel

---

[2] While Mr. Hopwood accuses Ms. Cockson of ignoring *Liberty Lobby*, that opinion was vacated, and Ms. Cockson cites *Moldea*—the case that made clear that the part of *Liberty Lobby* dealing with libel-proof plaintiffs largely survived—repeatedly, including extended textual explanations of why Mr. Hopwood is more likely the "habitual burglar" that *Moldea* and *Liberty Lobby* discuss than their examples of unrelated wrongdoing. ECF No. 22 at 16–17.

based on an earlier television report accusing him of rape and bribery. *Ali v. Moore*, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998) ("The fact that Fox depicted Ali as a rapist and an attempted briber before a jury actually convicted Ali is irrelevant to the issue of whether the depictions were, in fact, true."). That was true even though he was acquitted of some of the counts because "[w]e do not believe that Ali's reputation suffered further disgrace for being accused of twice committing attempted bribery in light of the fact that he was convicted of rape and one act of attempted bribery." *Id.* at 230. The reputation that libel law protects is the reputation to which a plaintiff is legitimately entitled; it does not protect an undeserved reputation simply because Mr. Hopwood had not yet been convicted of the crimes he had already committed.

### D. D.C. Courts Would Not Apply a Discovery Rule to Publicly-Accessible, Searchable Social Media Posts.

Mr. Hopwood contends Ms. Cockson failed to acknowledge a split of authority concerning whether the D.C. Court of Appeals would apply a discovery rule to inherently undiscoverable defamation claims. But Ms. Cockson's opening brief expressly stated that "courts in this District are divided." ECF No. 22 at 29. Given the numerous independent grounds warranting dismissal here, this Court need not wade into this question.

But if it chooses to do so, treating publicly accessible, searchable social media as more akin to mass media (where everyone agrees that there is no discovery rule) than secret communications or obscure circulars (where the question is open) is the better path. The reason courts decline to apply the discovery rule to mass-media publications is that "the fact of the injury is readily ascertainable upon publication." *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005). The same is true here. Because the alleged injury was readily ascertainable from the moment of publication, there is no principled basis to apply a discovery rule merely because the publication occurred on a social-media platform rather than in a newspaper or magazine.

According to the Third Amended Complaint itself, the challenged statements were publicly available on Facebook. *See* TAC ¶¶ 26–27. Because the alleged injury was readily ascertainable from the moment of publication, there is no principled basis for treating those posts differently from a newspaper article, magazine publication, or other public communication.

The few decisions applying the discovery rule to allegedly defamatory content on social media do not support a broad rule that all social-media publications are subject to delayed accrual. Each turned on its own facts, and several involved image-based advertising or non-searchable publications whose discoverability was materially different from the publicly accessible written posts at issue here. Those cases therefore provide little guidance on whether the discovery rule should apply to open, searchable social-media posts that are readily available to the public. *See Crespo v. 1215 CT LLC*, No. 1:22-CV-3801 (TNM), 2023 WL 11704907, at *1 (D.D.C. May 2, 2023) (Lanham Act case involving use of images on advertisements on social media and no distinct analysis of the defamation claim); *Gray v. Harco, Inc.*, No. 22-CV-1393 (TSC), 2024 WL 3026537, at *7 (D.D.C. June 17, 2024) (involving misappropriation of images for use in social media advertising, and expressly leaving unresolved whether the discovery rule applies to defamation claim); *Ratchford v. Cafe Dupont, LLC*, No. 24-CV-2062 (DLF), 2025 WL 2374501, at *3 (D.D.C. Aug. 14, 2025) (involving misappropriated model images, and applying the discovery rule because the club's pages "received very little online engagement"). Because each of these cases involved images used in online advertising, the challenged content was not necessarily readily discoverable through ordinary searches. They therefore bear little resemblance to this case, where the challenged statements consisted of publicly available written posts that could be located through a simple search.

Thus, even if the District of Columbia would apply a discovery rule to some defamation claims, the principles that support the mass media exception apply equally to open, searchable online posts. When posts are not hidden and where a plaintiff could find them if he looked, there is no reason to give a plaintiff an indeterminate period of time, perhaps even decades, to bring a claim. That is a recipe for litigating stale disputes.

### E. Count I Is Too Vague to Be Actionable.

Mr. Hopwood contends he is permitted to plead "broad dates and various means of communication 'on information and belief' because he is not in possession of those communications." ECF No. 28 at 26. But Ms. Cockson's argument is not that Mr. Hopwood cannot plead on information and belief—it is that *what* he pleads on information and belief is too vague to meet the basic standards of Rule 8. Count I is devoid of facts, let alone anything to meet the "require[ment] that the allegations based on information and belief 'be accompanied by a statement of the facts upon which the allegations are based.'" *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021); *see also Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (pleading on information and belief that plaintiff's phones were tapped without elaboration does not satisfy *Twombly*). Mr. Hopwood does not explain why he believes any of these statements exist or what he thinks their contents were and why. That is not enough to state a claim.

### F. The Alleged Statements to Courts and Bar Authorities Are Privileged from Defamation Liability.

Finally, while Mr. Hopwood concedes that Ms. Cockson's alleged complaints to bar authorities are protected by absolute privilege, ECF No. 28 at 27, he contends the email from an anonymous email address that refers to Ms. Cockson in the third person to the judge in Mr. Hopwood's criminal case was not. *Id.* at 19–22. Ms. Cockson has explained at length that Mr. Hopwood's attribution of this email to her is false, ECF No. 25 at 11–12, 15–21, but even taking

the allegation at face value, Mr. Hopwood is wrong. Under D.C. law, statements to a court "need not be relevant in any strict sense." *Brown v. Shimabukuro*, 118 F.2d 17, 18 (D.C. Cir. 1941).[3] Saying that a criminal defendant deserves a harsh sentence or should be detained pending sentencing because he is dangerous to his victim or other members of the community are relevant issues in a criminal trial. Nor is a *pro se* submission arguing that a defendant is dangerous objectively frivolous so as to take it outside of petition clause immunity. *See Nader v. The Democratic Nat'l Committee*, 555 F. Supp. 2d 137, 157 (D.C. 2008) ("petition[ing] the government for redress of grievances . . . by seeking redress in court [is] immune from liability" under the First Amendment). And courts can and do consider uncharged wrongdoing as part of sentencing or whether to release a defendant on bail. *See Powers v. U.S.*, 588 A.2d 1166, 1170 (D.C. 1991) (finding that the trial judge "acted permissibly" by considering the "totality of the evidence" on sentencing, including "an unproven charge"). The submission is thus subject to absolute privilege.

## II. <u>The Intentional Infliction of Emotional Distress Claim Likewise Fails and Does Not Meet the High Bar for "Outrageousness."</u>

Mr. Hopwood seems to tacitly concede that, consistent with *Falwell*, if his defamation claims fail, his IIED claims do too. ECF No. 28 at 27 ("Cockson argues that the IIED claim fails for the same reasons the defamation claims. Hopwood has, however adequately pleaded the defamation claims"). So, this Court can dispose of the IIED claim for that reason in any event. But at any rate, IIED is a very narrow tort and Mr. Hopwood cannot show that Ms. Cockson sharing her low opinion of him is "so outrageous in character, and so extreme in degree, as to go

---

[3] While Mr. Hopwood attempts to limit *Brown* to statements by a party's attorney, nothing in the legal standard suggests it is so limited, particularly where criminal procedure sometimes outright permits third parties to make submissions *pro se*, such as in victim impact statements.

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson v. Paragon Sys., Inc.*, 195 F. Supp. 3d 96, 99 (D.D.C. 2016) (quotation omitted).

The cases Mr. Hopwood cites show why. In *Homan v. Goyal*, for example, the D.C. Court of Appeals held that even "[i]n some, indeed most, instances, a few unwelcome visits from an irrational, angry and jealous husband, and some harassing telephone calls, would not be cognizable in an action for a tort which requires proof of extreme or outrageous conduct." 711 A.2d 812, 820 (D.C. 1998), *amended*, 720 A.2d 1152 (D.C. 1998). The facts there—falsely telling an abusive ex-husband that his former wife was living with the plaintiff with the knowledge that this would lead ex-husband calling the plaintiff hundreds of times, stalking him at his home and work, repeatedly hammering on the plaintiff's door, and making death threats to the point that the plaintiff had to flee his home—display the level of extreme conduct necessary for IIED. *Id.* What Mr. Hopwood alleges here is much closer to—indeed, *less* severe than—the "few unwelcome visits . . . and some harassing telephone calls"; it is not remotely analogous to prompting hundreds of calls, hammering on the door, and death threats.

Nor do Mr. Hopwood's other cases support IIED liability here. *Carter v. Hahn* was not merely a case in which a defendant reported the plaintiff to authorities—the defendant knowingly and repeatedly lied to authorities about who had deposited a bad check, specifically claiming to be personally familiar with the plaintiff and recognizing her, to try to get money from the her, leading to her being wrongfully arrested in front of her coworkers and jailed, before the civil suit prompted the defendant to retract his false report. 821 A.2d 890, 895 (D.C. 2003). It involved extorting money from the plaintiff by making a very specific and admittedly intentionally false factual statement that led to a humiliating arrest, not merely telling various people that the

plaintiff is a bad person. *Id.*; *see also Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 256 (D.C. Cir. 2008) (alleging that defendant made knowingly false report of specific incidents to regulators to take revenge on whistleblower and threatened him with deportation). And *Liser v. Smith* dismissed IIED claims on summary judgment after finding that errors in an arrest warrant affidavit were mistakes rather than intentional fabrications. 254 F. Supp. 2d 89, 107 (D.D.C. 2003) ("[A]n arrest supported by this sort of careless error is simply not sufficiently outrageous to support a claim of intentional infliction of emotional distress."). And, contrary to Mr. Hopwood's representation, ECF No. 28 at 29, *Fells v. Serv. Emps. Int'l Union*, *affirmed* the dismissal of IIED charges even as it reversed on some other counts. 281 A.3d 572, 588 (D.C. 2022).

Mr. Hopwood does not allege the sort of intentional fabricated reports of specific incidents to law enforcement at issue in any of these cases. He alleges vague, non-specific warnings to assorted people that he was generically dangerous without any specific incident that he alleges was fabulism. TAC ¶¶ 2, 22–27. Thus, like in "most[] instances," these few statements, even taken together, do not rise to the level of outrageous conduct. *Homan*, 711 A.2d at 820; *see also Langer v. George Washington Univ.*, 498 F. Supp. 2d 196, 200 (D.D.C. 2007) ("mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficient" to allege IIED).

## III. <u>Mr. Hopwood Does Not Meaningfully Respond to the Motion's Arguments Regarding Conspiracy.</u>

With respect to the conspiracy claims, Mr. Hopwood simply states that Ms. Cockson's Motion "ignore[d] the detailed factual allegations contained in the amended complaint." ECF No. 28 at 29. But on the critical element of an agreement to commit an unlawful act, Mr. Hopwood asserts conclusorily that an agreement exists. He does not respond to the numerous

authorities Ms. Cockson cites holding that generally asserting that people communicated with one another is not enough to support a plausible inference that they reached an agreement, let alone an agreement to do something unlawful. *Twombly* itself held that loose allegations that a conspiracy exists are not enough. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("[A] bare assertion of conspiracy will not suffice."). The TAC contains few factual allegations linking any unnamed third party's conduct to a purported agreement with Ms. Cockson, and Mr. Hopwood's opposition does not meaningfully respond to the motion's arguments on that point. That Mr. Hopwood wishes to hold Ms. Cockson liable for unnamed third parties' acts is not enough to survive a motion to dismiss; he must plead facts warranting a plausible inference of a conspiracy and does not do so. Nor does Mr. Hopwood respond to Ms. Cockson's arguments that the conduct he alleges is at worst distasteful rather than unlawful conduct and the TAC does not specify an underlying tort, ECF No. 22 at 39, 41–42, or that Mr. Hopwood fails to show cognizable harm to him from actions directed at his friend who seems to be unlawfully practicing law on his behalf. *Id.* at 40–41.

Mr. Hopwood's attempt to defend his 42 U.S.C. § 1985(2) claim is also cursory and does not respond to Ms. Cockson's arguments. It likewise does not respond to the problems of finding a qualifying unlawful act, or the required nexus to testimony or attendance of a witness.

## IV. Mr. Hopwood Does Not Identify Additional Facts He Could Plead, So Dismissal Should Be with Prejudice.

Finally, this is Mr. Hopwood's *third* bite at the apple, and nothing in his brief identifies any further facts that he could plead if given the opportunity that could make a difference on any of the claims Ms. Cockson challenges. Dismissal should therefore be with prejudice.

## CONCLUSION

For the foregoing reasons, and those stated in the Motion, Ms. Cockson respectfully requests that the court dismiss the Third Amended Complaint with prejudice.

Dated: September 14, 2026

Respectfully submitted,

/s/ Joseph M. Sanderson

Michelle S. Kallen (Bar No. 1030497)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036-1795
Telephone: 202 429 3000
Facsimile: 202 429 3902
mkallen@steptoe.com

Joseph M. Sanderson (Bar No. NY0560)
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Telephone: 212 506 3900
Facsimile: 212 506 3950
josanderson@steptoe.com

*Attorneys for Defendant*